HANSON, Senior District Judge.
 

 This puzzling case, which the world will little note nor long remember because the new Bankruptcy Act almost certainly obviates the problem it presents, was brought by a bankruptcy trustee against the bankrupt and the custodian of certain assets, seeking the turnover of the assets to the trustee. The assets, cash and securities worth all together some $85,000 to $90,000, comprise the remaining principal of a personal property trust created by the will of the bankrupt’s father. The will named the bankrupt’s mother as life beneficiary in income from the trust, with the benefit of invasion of the corpus if needed, and provided that the remaining principal be distributed on the mother’s death to the testator’s then living descendants per stirpes. By a spendthrift provision both the principal and interest of the trust were excluded from the claims of creditors of the beneficiaries or others and were made immune to transfer or encumbrance. The testator died in 1974, and his will was probated in Chicago according to Illinois law.
 

 The bankrupt filed a voluntary petition in bankruptcy in the District of Minnesota on November 8, 1976; the appointment of the trustee is effective from that date. The bankrupt’s mother was then living; and because of the spendthrift provision governing the trust, the bankrupt’s contingent remainder interest in it did not vest in the trustee when the petition was filed.
 
 [1]
 
 However, the mother died only a month and a half later, on December 24, 1976, leaving the bankrupt as the person entitled to the trust principal under his father’s will.
 

 Illinois law, like that of many other states, permits a legatee to renounce or disclaim the gift, provided certain requirements are met, and provides that “the disclaimer shall relate back for all purposes” to the time when the gift would otherwise be considered to have vested in the legatee.
 
 [2]
 
 This rule was first adopted and its effect specified by judicial decision.
 
 See People v. Flanagin, 331
 
 Ill. 203, 162 N.E. 848 (1928), where, after quoting from Kent’s Commentaries and Washburn on Real Property and citing cases from seven other states, the Supreme Court of Illinois summed up as follows:
 

 In these cases the rule is announced that the renunciation relates back to the moment when the gift was made, so that the
 
 *514
 
 estate does not vest, but remains in the original owner, precisely the same as if the will or deed had never been executed, or passes under the instrument according to its terms, to another, and that a renunciation is not a voluntary conveyance and is not subject to attack by creditors.
 

 162 N.E. at 850 (citations omitted). The rule was later embodied in the Illinois Probate Act and given the same interpretation and effect as before by the courts: The right to disclaim is founded on the principle that a party does not have to accept an estate against his will; the motive of the disclaimant is immaterial provided he does not fraudulently receive a benefit for his action; the right is not limited even where the rights of judgment creditors against the disclaimant with execution returned unsatisfied are involved; and the disclaimer prevents passage of title to the disclaimant and is not a conveyance.
 
 See In Re Estate of Hansen,
 
 109 Ill.App.2d 283, 248 N.E.2d 709 (1969);
 
 Cook v. Dove,
 
 32 Ill.2d 109, 203 N.E.2d 892 (1965).
 
 [3]
 

 Seeking to take advantage of this aspect of Illinois law, on June 14, 1977 the bankrupt filed- a disclaimer of the assets here in question in the Illinois court wherein his father’s will was probated. No question is raised in this appeal as to the validity or effectiveness of the disclaimer under Illinois law considered by itself.
 
 [4]
 
 Evidently the Illinois court gave effect to it and determined that the assets should pass under the will to the bankrupt’s three children. The record discloses that the assets have been transferred to Paine, Webber, Jackson and Curtis, Inc., the co-defendant, which now holds them on behalf and in the names of the children as tenants in common.
 

 This case, seeking turnover of the assets to the trustee, was filed in the bankruptcy court on February 23, 1978, pursuant to Rule 701(1), Rules of Bankruptcy Procedure. The trustee’s claim to the assets is founded on the second paragraph of Section 70a of the Bankruptcy Act of 1898 as amended in 1938 and again in 1952, 11 U.S.C. § 110(a) ¶ 2 (1976), which provides that
 

 All property, wherever located, except insofar as it is property which is held to be exempt, which vests in the bankrupt within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt, and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy.
 

 The trustee’s theory is that, the bankrupt’s disclaimer and Illinois law notwithstanding, the trust assets, or at least sufficient interest in them for § 70a ¶ 2 to get a grip on, so to speak, vested in the bankrupt within the meaning of § 70a ¶ 2 immediately upon the death of his mother, and therefore vested in the trustee by operation of the statute, and that the later disclaimer was therefore barred, either under the Illinois disclaimer statute itself,
 
 [5]
 
 or under the last clause of ¶ 2, or both. The bankrupt and the custodian of the assets, on the other hand, point to the cases holding that
 

 
 *515
 
 [p]r°perty interests are created and defined by state law [, and u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.
 
 [6]
 

 Arguing that no federal interest requires a different result, they conclude that the bankrupt’s disclaimer should be held to have prevented the vesting in him of the assets or any interest in them falling within the scope of § 70a ¶ 2, and therefore to have prevented the vesting of the assets or any interest in them in the trustee by operation of § 70a ¶ 2.
 

 Both the bankruptcy court,
 
 [7]
 
 and the district court
 
 [8]
 
 on appeal by defendants from the judgment of the bankruptcy court, held for the trustee. For the reasons set forth below, however, we conclude that the courts below were in error, and that their judgments must be reversed. Our analysis proceeds as follows. We first determine the extent of the bankrupt’s interest in the trust assets, under Illinois law, between the time his mother died and the time he filed his disclaimer. We then address the question whether the interest so defined amounts to “property . . . which vest[ed] in the bankrupt within six months after bankruptcy by bequest, devise or inheritance” within the meaning of § 70a ¶ 2. We see no reason to depart from the usual rule, that state law determines the extent of a bankrupt’s interest in property, by looking beyond Illinois law for a characterization of the bankrupt’s interest in the assets from the time his mother died until he disclaimed. Although we grant that analysis might proceed on this alternative basis, we have found that nothing is gained thereby in the way of clarity, added insight, or relevant considerations.
 

 The Illinois cases already cited make it. clear that, from the time his mother died until he disclaimed, the bankrupt had at least the following “interest” in the trust assets: he had the right or power to either accept or disclaim the gift of the assets made to him under his father’s will. It is .also clear that had the bankrupt accepted the gift, it would have been considered to have vested in him the moment his mother died, and to have been assignable by him from that moment. Minimally, then, the bankrupt’s contingent remainder interest in the assets must be held to have given rise, within six months after bankruptcy, to a power in him
 
 to acquire an assignable interest in the
 
 assets.
 
 [9]
 
 As the district court pointed out, this power or interest was “fixed and determined” at the time of the mother’s death; and it put it within the bankrupt’s power to choose, under the circumstances, “whether the windfall of [the] bequest should devolve to [his] creditors or the beneficiaries of his disclaimer.”
 

 The bankruptcy court went farther than this, holding that the bankrupt actually acquired an
 
 assignable
 
 interest in the assets the moment his mother died. To reach this result the court reasoned that the spendthrift provision governing the trust expired
 
 *516
 
 the moment the mother died; and that since this provision was all that had previously rendered the bankrupt’s interest in the assets non-assignable, his interest must have become assignable at that moment.
 

 We think the bankruptcy court’s analysis overlooks the extent of the change in the bankrupt’s position vis-á-vis the assets worked by the death of his mother. Thus, it is certainly wrong to say that when the mother died, the bankrupt’s
 
 contingent remainder
 
 interest in the assets became assignable. Rather, when the mother died, the nature of the bankrupt’s interest in the assets itself changed; his remainder interest then ripened, as we have said, into the power to either accept or disclaim the outright gift of the assets. This power was certainly not assignable by the bankrupt under Illinois law;
 
 [10]
 
 and while it may be true that he could have manifested his acceptance of the gift by attempting to assign it,
 
 [11]
 
 the fact remains that he apparently did not do so,
 
 [12]
 
 and that under Illinois law he is deemed never to have accepted the gift and therefore never to have acquired an assignable interest in it.
 
 [13]
 

 In our view the question in the case must come to this: whether, in enacting § 70a ¶ 2, Congress intended to capture for the trustee, and so the bankrupt’s creditors, the only right with respect to the trust assets that the bankrupt clearly possessed under Illinois law from the time his mother died until he disclaimed, which was the right to either accept or disclaim the assets he was entitled to under his father’s will. If Congress did intend to capture this right, then the right vested in turn in the trustee by operation of § 70a ¶ 2 when the" mother died; the bankrupt then lost the whole right, including the right to disclaim; and the trustee correspondingly gained the whole right, including the right to accept the gift.
 
 [14]
 
 On the other hand, if Congress did not intend to capture the right for .the trustee, then the bankrupt retained it, and was free, even though he had filed for bankruptcy, to exercise the right to disclaim the gift and so to prevent the assets or any further interest in them from vesting in him under Illinois law, or from vesting in the trustee under § 70a ¶ 2.
 

 The strongest theory we have found in support of the trustee’s claim rests on the premise that, in enacting. § 70a ¶ 2, Congress intended to capture for the trustee all interests in property that vest in the bankrupt within six months after bankruptcy by bequest, devise, or inheritance,
 
 that would have passed to the trustee had they been “owned” by the bankrupt at the time he filed his petition in bankruptcy.
 
 This premise is hinted at in the trustee’s brief and in the bankruptcy court’s opinion, and is explicit in dicta in
 
 Thornton v. Scarborough,
 
 5 Cir., 348 F.2d 17,
 
 mod. on other grounds,
 
 349 F.2d 1023 (5th Cir. 1965), where the following language was adopted by the Fifth Circuit:
 

 
 *517
 
 “In order for the interest acquired by the bankrupt within six months after the filing of the petition to pass to the trustee under the second paragraph of Section 70(a), it must be such an interest as would have passed to the trustee had it been owned by the bankrupt at the time the petition was filed. The second paragraph of Section 70(a) does not expand the property which passes to the trustee, nor does it diminish it, it merely extends the time for which the title to property may vest in the trustee, which property was acquired by the bankrupt by bequest, devise or inheritance, within six months after the petition is filed.”
 

 348 F.2d at 20 (quoting language contained in the referee in bankruptcy’s opinion and already approved by the trial court). The second premise required by this theory is that, had the bankrupt in this case been in the same position vis-a-vis the trust assets when he filed for bankruptcy, as he was immediately after his mother died — had his mother died, say, one day before he filed, all else being held constant — the bankrupt’s interest in the assets would have vested in the trustee by operation of § 70a ¶ 1 upon the filing of the petition, and the subsequent disclaimer would have been ineffective even under Illinois law. From these two premises the conclusion may be drawn that the bankrupt’s after-acquired power to accept or disclaim the assets was “property vesting] in [him] within six months after bankruptcy by bequest, devise or inheritance” within the meaning of § 70a ¶ 2, which therefore passed to the trustee by operation of the statute the moment it was acquired.
 

 We are prepared to accept the second premise here advanced. Thus, supposing the bankrupt’s mother to have died one day before he filed his petition in bankruptcy, all else being the same, the bankrupt would when he filed have had the power under Illinois law to either accept or reject the gift made to him under his father’s will. But § 70a(3) provides that:
 

 The trustee . . . shall in turn be vested by operation of law with the title of the bankrupt as of the- date of the filing of the petition ... to all of the following kinds of property wherever located ... (3) powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person[.]
 

 The power to accept the gift would have been one the bankrupt could have exercised for his own benefit (prior to bankruptcy); this power would under our hypothesis have vested in the trustee upon filing by operation of § 70a(3), who would presumably have exercised it and thus acquired the assets.
 
 [15]
 

 Our difficulty with this theory is with its broad first premise, that § 70a ¶ 2 was intended to capture for the trustee all interests in property devolving on the bankrupt within six months of filing that would have gone to the trustee had the bankrupt owned them at the time of filing. To begin with, we do not feel constrained to accept this proposition on the authority of
 
 Thornton v. Scarborough, supra,
 
 where the court was not concerned with and did not remotely consider the problem now before us. The question there involved was whether a bankrupt’s contingent remainder interest in his father’s estate, which estate was left by will four days after bankruptcy to the father’s widow for life and thereafter “for distribution to such children or descendants of children as might then survive the widow,” was property vesting in the bankrupt within the meaning of § 70a ¶ 2. No disclaimer of the remainder interest was involved. Without examining it in any detail, the court in effect accepted the premise that if the interest was assignable by the bankrupt under applicable state law, it would fall within the scope of § 70a ¶ 2. The main question addressed was whether the interest was so assignable; the court
 
 *518
 
 concluded that it was not, and therefore that it had not vested in the trustee by operation of § 70a ¶ 2. The broadest reading of ¶ 2 necessary to the statement of the issue addressed in
 
 Thornton,
 
 therefore, was that it was intended to capture for the trustee all
 
 assignable
 
 interests in property to which a bankrupt succeeds within six months after bankruptcy by bequest, devise or inheritance; the question whether it was also intended to capture non-assignable rights to acquire property was in no way implicated. This fact at the very least neutralizes the authority of
 
 Thornton
 
 in the instant case.
 

 Nor do the authorities relied on in
 
 Thornton
 
 as “seempng] to support” the broad construction of § 70a ¶ 2 there suggested by the Fifth Circuit go as far as is required to vindicate the trustee’s claim in the instant case. The authorities unanimously say that assignable, transferable or leviable interests acquired by the bankrupt within six months of bankruptcy by bequest, devise or inheritance fall within the scope of § 70a ¶ 2; but none says that rights to acquire property that are neither assignable nor leviable under state law also fall within the scope of the statute.
 
 [16]
 

 Setting aside the dicta of
 
 Thornton v. Scarborough,
 
 therefore, we now turn to an examination of the language and the legislative history of § 70a, which we think together show that in enacting § 70a ¶ 2, Congress had no intention to capture for the trustee the after-acquired right to accept or disclaim the trust assets that is here in question. ■
 

 We point first to § 70a(7), which was added to § 70 at the same time as was § 70a ¶ 2,
 
 [17]
 
 and, as we discuss more fully below, for much the same purpose. § 70a(7) provides that:
 

 The trustee . . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition ... to all of the following kinds of property wherever located . . . (7) contingent remainders, executory devises and limitations, rights of entry for condition broken, rights or possibilities of reverter, and like interests
 
 in real property,
 
 which were nonassignable prior to bankruptcy and which, within six months thereafter, become assignable interests or estates or
 
 give rise to powers in the bankrupt to acquire assignable interests or estates
 

 (emphasis added). We think it clear that, if the instant bankrupt’s contingent remainder interest in the trust assets had been an interest in real property, that interest would have vested in the trustee by force of § 70a(7) upon the death of the bankrupt’s mother, when the interest gave rise under Illinois law to a power in the bankrupt to acquire an assignable interest in the assets. However, the assets in question are personalty; therefore § 70a(7) does not apply. And the only arguably applicable provision, § 70a ¶ 2, in stark contrast to § 70a(7), speaks not in terms of
 
 powers of the bankrupt to acquire
 
 assignable interests or estates, but in terms of property that
 
 vests
 
 in the bankrupt — in other words, as the authorities already cited have said, of
 
 acquired
 
 
 *519
 
 assignable interests or estates.
 
 [18]
 
 § 70a(7) shows that Congress knew how to manifest an intention to capture for the trustee property the bankrupt becomes entitled to acquire within six months of bankruptcy if it desired to do so. This, plus the fact that it did not manifest any such intention in the language of § 70a ¶ 2, gives rise to the inference that it had no intention to override applicable state law of disclaimer and capture the assets here in question for the trustee.
 

 This inference is entirely consistent with the legislative history of both § 70a(7) and § 70a ¶ 2, which demonstrates clearly that the overriding purpose of these sections of the Act was not so much to benefit the bankrupt’s creditors, as to
 
 prevent the bankrupt from benefiting
 
 from certain after-bankruptcy windfalls while his creditors were shut out. On this general subject we can do no better than to quote from 4A Collier:
 

 [Prior to the amendments of 1938, section 70 contained no provisions concerning property acquired by the bankrupt after the inception of bankruptcy.
 
 [19]
 
 As stated in
 
 Matter of Barnett
 
 [37 F.Supp. 531 (E.D.N.Y.1941)
 
 rev’d on other grounds,
 
 124 F.2d 1005 (2nd Cir. 1942)], the theory then was to take the property of the bankrupt as of the date of bankruptcy but leave to him future prospects and rights.
 
 [20]
 

 This policy, however, permitted certain assets to escape administration in bankruptcy for technical reasons that were viewed as unnecessarily favorable to the bankrupt. For example,
 

 if a contingent interest was assignable under state law it passed to the trustee by virtue of § 70a(5). But where such interests were not assignable under the state law, the bankrupt was enabled to divest himself of his debts through bankruptcy and yet possibly come into great wealth during the administration of his estate by virtue of the ripening of contingent or executory interests untouched by bankruptcy. Moreover, liberal credits were frequently extended by tradesmen in reliance upon expectancies and debtors frequently invoked the Act to escape payments. This was characterized as “virtually a fraud upon the act.” Accordingly, clause (7) of § 70a now specifically includes various contingent and executory interests which within six months after bankruptcy become assignable interests or estates, or which give rise to powers in the bankrupt to acquire assignable interests or estates. The same theory prompted the insertion of the first two paragraphs following, but not a part of, clause (8) of § 70a. By virtue of these provisions legacies, bequests, devises, estates by the entirety which become transferable solely by the bankrupt, and similar interests acquired within six months subsequent to bankruptcy are brought within the purview of § 70. With regard to these changes it was said in the
 
 Analysis of H.R. 12889:
 

 “To an extent this involves a departure from the strict theory of the date of cleavage, but the bankrupt ought not to get the benefit of all legal complications at the expense of creditors. The vesting of such property is usually independent of the bankrupt’s economic efforts and has no relation to his normal budget, so the usual reasons assigned for leaving him his after-acquired property do not apply.”
 
 [21]
 
 -
 

 The point to be made here is that where, as here, the bankrupt disclaims the windfall he would otherwise acquire within six months after bankruptcy, he does not “get the benefit of all legal complications at the expense of his creditors” — someone else
 
 *520
 
 gets the benefit. The fact that the bankrupt is in any case
 
 himself
 
 kept from benefiting at the expense of his creditors still serves to prevent the sort of “fraud upon the act” with which Congress was concerned and which §§ 70a(7) and 70a ¶ 2 were designed to put a stop to.
 
 [22]
 
 In this connection we note that there is no evidence in this case that the bankrupt’s creditors relied on his expectancy in the trust assets in extending credit to him; and that in any case, as the district court pointed out, such reliance would have been unreasonable in view of the spendthrift provisions governing the trust.
 

 It is true that § 70a(7), by reaching beyond property that vests in the bankrupt to capture for the trustee even real property or assignable interests therein that the bankrupt gains the power to acquire within six months of bankruptcy by bequest or devise, manifests a Congressional intention to benefit the creditors as well as the intention to prevent the bankrupt from benefiting from the windfall at the expense of his creditors. However, absent a clear manifestation of such intent, as in § 70a(7) we cannot conclude that Congress intended to go so far in enacting § 70a ¶ 2. As is said in 4A Collier 70.07[1] at 90-91 (footnotes omitted):
 

 Section 70a enumerates in some detail the various assets and interests of the bankrupt that are deemed available for collection and distribution in bankruptcy. This enumeration is exclusive, and the title to all things and rights which do not fall within the vesting words of the various clauses in § 70a remains in the bankrupt.
 

 Nor do we believe that our holding “render^] the second paragraph of section 70a largely nugatory,” as the district court concluded it would. Full effect is still given to the express intent of Congress to prevent the bankrupt from benefiting from after-bankruptcy windfalls at the expense of his creditors, and to the language of § 70a ¶ 2, which vests in the trustee all property that
 
 vests
 
 in the bankrupt within six months of bankruptcy by bequest, devise, or inheritance. While it may be true, as the district court said, that “exercise of the right [to disclaim] is predictable in this situation,” this would be no frustration of the Congressional intent behind ¶ 2, which, we repeat, was not so much to give creditors the benefit of post-bankruptcy windfalls on which they had no right to rely, as to prevent the bankrupt from benefiting from such windfalls while the creditors did not.
 

 As we noted at the beginning of this opinion, the Bankruptcy Act of 1978 almost certainly obviates the question presented in this case. § 541(a)(5)(A) of the new Act provides that
 

 (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
 

 (5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires
 
 or becomes entitled to acquire
 
 within 180 days after such date—
 

 (A) by bequest, devise or inheritance
 

 11 U.S.C.A. § 541(a)(5)(A) (1978) (effective October 1, 1979) (emphasis added). If we were deciding this case under the new Act, the result might well be different. However the old Act controls, as does the intent of the Congress that enacted it.
 
 Teamsters v. United States,
 
 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Under the old Act, the bankrupt herein acquired no interest in the trust assets that constituted “property . . which vest[ed] in [him] within six months of bankruptcy by bequest, devise or inheritance.” Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . As it otherwise would have under § 70a(5) of the old Bankruptcy Act, 11 U.S.C. § 110(a)(5) (1976).
 
 See
 
 4A Collier on Bankruptcy *' 70.26 at 364-72 (14th ed. 1978). Note: We hereinafter refer to the edition of Collier on Bankruptcy just cited simply as “Collier.”
 

 [2]
 

 . See Ill.Rev.Stat.1977, ch. IIOV2, § 2-7, formerly Ill.Rev.Stat.1975, ch. 3, § 2-7. Besides legatees, others entitled to disclaim succession to property are heirs, persons succeeding to disclaimed interests, beneficiaries under a will and persons designated to take pursuant to a power of appointment exercised by a will. § 2-7(a). The effect of a valid disclaimer is specified in § 2-7(e), which provides:
 

 Unless the decedent or donee of the power has provided for another disposition, the property or interest disclaimed. descends or shall be distributed (1) if a present interest, as if the disclaimant had predeceased the decedent, or if the disclaimant is one designated to take pursuant to a power of appointment exercised by a will, as if the disclaimant had predeceased the donee of the power or (2) if a future interest, as if the disclaimant had predeceased the event which determines that the taker has become finally ascertained and his interest has become indefeasibly fixed both in quality and quantity; and the disclaimer shall relate back for all purposes to the date of the death of the decedent, the date of the death of the donee of the power, or the date of the determinative event, as the case may be.
 

 [3]
 

 . On the right to disclaim a devise or bequest,
 
 see generally,
 
 93 A.L.R.2d 8-86. On the right of creditors to complain of or control a debtor’s disclaimer of a gift under a will,
 
 see
 
 27 A.L.R. 472-79; 133 A.L.R. 1428-31.
 

 [4]
 

 . The trustee points out, however, that the courts below only assumed, without deciding, that the bankrupt took no affirmative action to accept the bequest or to exert any dominion or control over the trust assets. We make the same assumption here, again without deciding the question.
 

 [5]
 

 . § 2-7(f) of the Illinois disclaimer statute provides: The right to disclaim property or an interest therein is barred by (1) an assignment, conveyance, encumbrance, pledge, or transfer of the property or interest, or a contract therefor, (2) a written waiver of the right to disclaim, (3) an acceptance of the property or interest or benefit thereunder, or (4) a sale of the property or interest under judicial sale made before the disclaimer is effected.
 

 The trustee takes the view that the bankrupt’s interest in the trust assets was assigned to him by operation of § 70a !' 2, barring any subsequent disclaimer under § 2-7(f).
 

 [6]
 

 .
 
 Butner v. United States,
 
 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).
 
 See also Demorest v. City Bank Co.,
 
 321 U.S. 36, 48, 64 S.Ct. 384, 391, 88 L.Ed. 526 (1944) (“Rights to succession by will are created by the state and may be limited, conditioned, or abolished by it.”);
 
 Chicago Board of Trade v. Johnson,
 
 264 U.S. 1, 10, 44 S.Ct. 232, 68 L.Ed. 533 (1924) (where the bankruptcy statute deals with property rights regulated by state law, federal bankruptcy courts follow state law unless the language of Congress indicates a policy requiring a broader construction of the bankruptcy statute than state law would give it); and
 
 Matter of Gervich,
 
 570 F.2d 247, 251 (8th Cir. 1978) (“The law of the state where the property is situated determines the extent of the bankrupt’s interest in the property . .”). Appellants also rely-on
 
 Matter of Estate of Dankner,
 
 86 Misc.2d 1081, 384 N.Y.S.2d 683 (1976); in which, on facts similar to those of the instant case, the New York Surrogate’s Court held for the bankrupt.
 

 [7]
 

 . The Honorable Kenneth G. Owens, United States Bankruptcy Judge for the District of Minnesota.
 

 [8]
 

 . The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.
 

 [9]
 

 .
 
 Compare
 
 § 70a(7) of the Bankruptcy Act, which we discuss in more detail below.
 

 [10]
 

 .
 
 See, e. g., People v. Flanagin, supra,
 
 162 N.E. at 850: “ ‘A title by deed or devise requires the assent
 
 of the grantee or devisee
 
 before it can take effect.’ ” (Quoting 3 Wash-burn on Real Property, 402 (6th ed.)) (emphasis added).
 
 See also
 
 § 2-7(a) and (b) of the Illinois disclaimer statute: Only the enumerated successors to property may disclaim; the disclaimer must be signed by the disciaimant.
 

 [11]
 

 .
 
 See
 
 93 A.L.R.2d at 46-^19.
 

 [12]
 

 .
 
 See
 
 n.4
 
 supra.
 

 [13]
 

 . We think that this result is required under Illinois law. In the case on which the trustee principally relies,
 
 In re Champion, 5
 
 Collier Bankruptcy Cases 645 (N.D.Ga.1975), the court reached a different result, on facts similar to those of this case, on the basis of its analysis of Georgia law. We decline to follow Champion; we agree with the district court that “the
 
 Champion
 
 analysis [is] somewhat unsatisfactory because, for all its reliance on state law, it ultimately appears to disregard the clear intent of [Georgia’s law of disclaimer].”
 

 [14]
 

 .In saying this we recognized that to so hold would imply that the Bankruptcy Act super-cedes Illinois law on the question whether someone other than a legatee can exercise the right to accept the gift made to the legatee. In effect, such a holding would imply the assignment to the trustee, under § 70a *' 2, of a power not assignable under state law. We have no doubt that Congress has the power under Art. I § 8 cl. 4 of the Constitution to enact such a provision. The only question is whether it did so in enacting § 70a ''2.
 

 [15]
 

 . Of course a potential bankrupt aware of his right to disclaim and wishing to do so would file his disclaimer
 
 before
 
 filing for bankruptcy; and this disclaimer would likely be given effect as against the trustee’s claim to the disclaimed property. See
 
 Hoecker v. United Bank,
 
 476 F.2d 838 (10th Cir. 1973).
 

 [16]
 

 . The authorities relied on were Nadler, The Law of Bankruptcy, § 290 at 264 (1948); 3 Remington on Bankruptcy, § 1217 at 62 (1957); 4 Collier on Bankruptcy, § 70.03, at 941 (14th ed. 1962). Nadler comes closest to supporting the proposition adopted in
 
 Thornton,
 
 saying that § 70a ' 2
 

 reaches out for a further period of six months [after filing], and brings back into the estate as if it were in existence at the date of bankruptcy, any and all types of property, tangible or intangible, personal as well as real, which have become vested in the bankrupt during the interim of such six succeeding months that followed the commencement of the bankruptcy proceeding.
 

 He goes on, however, to qualify this statement by saying that the property captured by ' 2
 

 must, however, be property that has come by “bequest, devise, or inheritance,” and of such an assignable, transferable or leviable nature as would have vested in his trustee had the bankrupt owned it at the date of bankruptcy.
 

 [17]
 

 . Both § 70a(7) and § 70a ' 2 were added to § 70 in 1938, as part of the extensive revisions of the Bankruptcy Act embodied in the Chandler Act.
 
 See generally,
 
 1 Collier 1'' 0.01 0.07; 4A Collier '' 70.02 70.03.
 

 [18]
 

 .Compare Thornton v. Scarborough, supra,
 
 348 F.2d at 19: “We conclude that the word ‘vests’ used here is not a word of art used in determining what kind of property interest the bankrupt acquired upon the death of his father. We think the words ‘vests in’ are synonymous with ‘is acquired by’ or ‘passes to.’ ”
 

 [19]
 

 . 4A Collier • 70.02[7] at 26.
 

 [20]
 

 .
 
 Id.,
 
 ' 70.27 at 373 n.4.
 

 [21]
 

 .
 
 Id.,
 
 ' 70.03[2] at 37 38 (footnotes omitted).
 

 [22]
 

 . Recall that under Illinois law, the disclaimer is ineffective if the disciaimant fraudulently receives a benefit for his action.
 
 See People v. Flanagin, supra,
 
 162 N.E. at 851.