In the Matter of John Watson LEWIS, and Hilda Miller Lewis, Debtors.

Daniel J. FLANIGAN, Trustee, Plaintiff,

v.

Hilda Miller LEWIS, Bishop Trust Co., Ltd., and Mary Jane Lewis, Defendants.

Robert DENTON, M.D., Plaintiff,

v.

John Watson LEWIS, and Hilda Miller Lewis, Defendants.

Bankruptcy No. 82–03825–SJ.
Adv. Nos. 84–0180–SJ, 84–0013–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Sept. 6, 1984.

---

28

William R. Jackson III and Charles E. Fowler III, Jenkins, Jensen, Husch, Eppenberger, Donohue, Elson & Cornfeld, Kansas City, Mo., for Daniel J. Flanigan.

Don Witt, Witt & Boggs, Platte City, Mo., for Robert Denton, M.D.

Hugh A. Miner, Hugh A. Miner, P.C., St. Joseph, Mo., for Hilda M. Lewis.

Thomas M. Rosenberg, Honolulu, Hawaii, for Bishop Trust.

Alan Rothfeld, New York City, and Fred Bellemere, Jr., Bellemere & Bellemere, Kansas City, Mo., for Mary Jane Lewis.

ORDER CONSOLIDATING ACTIONS FOR THE PURPOSE OF DECISION AND FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DIRECTING DEFENDANTS TO TURN OVER TO BANKRUPTCY ESTATE A CERTAIN BEQUEST

DENNIS J. STEWART, Bankruptcy Judge.

These are two adversary actions filed against the debtors (1) by the trustee to

compel the turnover to the estate in bankruptcy of a bequest to which the debtor Hilda Miller Lewis became entitled within 180 days of the date of bankruptcy within the meaning of § 541 of the Bankruptcy Code and (2) by the creditor Denton to deny the debtor's discharge in bankruptcy for her failing and refusing to turn the bequest over to the trustee in bankruptcy and instead renouncing her right to the bequest in favor of her daughter.

The court has conducted its hearings of the issues on the dates of April 30, 1984, and May 11, 1984. The material facts then demonstrated to the court were that the defendant Hilda Miller Lewis became entitled on April 13, 1983, to a bequest as a residuary beneficiary in the decedent's estate of Mary Frances Paul, which is now in the process of being probated in a state court of Hawaii. The debtors had previously filed their petition for relief under title 11 of the United States Code on December 14, 1982. Under the law of bankruptcy, as set forth in the clear letter of § 541 of the Bankruptcy Code, it was the duty of the defendant, and remains her duty, to turn the bequest over to the trustee in bankruptcy. That section pertinently provides that:

"The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property. Wherever located:

\*    \*    \*    \*    \*    \*

"An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days ·after such date—

"By bequest, devise, or inheritance."

The defendant nevertheless received the advice of counsel, apparently based upon a legal precedent antedating the above provision,[1] that she should renounce the bequest in favor of her daughter rather than turn it over to the bankruptcy trustee. This was done by her by means of the execution of a written renunciation on November 10, 1983. It is the contention that, under the law of Hawaii, the renunciation is now irrevocable. The plaintiffs, on the other hand, contend that the law of Hawaii dictates that the renunciation may be revoked and the bequest restored to the bankruptcy estate.[2]

---

**1.** The defendant relies upon *Matter of Estate of Danker,* 86 Misc.2d 1081, 384 N.Y.S.2d 683 (1976), indicating that it is the majority rule of state courts that a renunciation will be permitted to defeat the rights of a trustee in bankruptcy. But, under the Bankruptcy Code, this result is changed because of the explicit provision of § 541 adding to the estate in bankruptcy any interest which "the debtor ... *becomes entitled to acquire* within 180 days after" the filing of the petition. (Emphasis added.) This is materially different from the relevant statute under the former Bankruptcy Act, § 70(a), which did not purport to include property which the debtor "becomes entitled to acquire" within 180 days of bankruptcy, 'but rather only such property "which vests in the bankrupt within six months after bankruptcy by bequest, devise, or inheritance." See *In re Detlefsen,* 610 F.2d 512, 520 (8th Cir.1979), which holds that Congress has the power to enact a law which supercedes state law and gives someone other than the debtor the power to renounce the bequest or legacy. In that case, it was held that section 70(a) of the old Bankruptcy Act did not constitute such an enactment. It was noted, however, that, with its new language, "or becomes entitled to acquire,"

the "Bankruptcy Act of 1978 almost certainly obviates the question presented in this case."

**2.** The plaintiffs assume the primacy of state law on this issue and the controversy in this regard is whether the law of Hawaii allows for revocation of the renunciation and restoration of the property to the within estate in bankruptcy. But, by reason of the explicit provisions of § 541 of the Bankruptcy Code, *supra,* making the bequest property of the bankruptcy estate and those of § 549 prohibiting the postbankruptcy transfer, this court believes that federal law is supreme on this issue and requires return of the bequest to the estate. It is accordingly the debtors and their transferees, whether by revocation of the renunciation, or otherwise who have the duty to effect return of the legacy to the bankruptcy court. See § 550 of the Bankruptcy Code. "In saying this we recognized that to so hold would imply that the Bankruptcy Act supercedes Illinois (or other state) law on the question whether someone other than a legatee can exercise the right to accept the gift made to the legatee. In effect, such a holding would imply the assignment to the trustee, under section 70a para. 2, of a

■ It is not the law of the state which here controls the issue, however, but the paramount bankruptcy law which requires restoration to the bankruptcy estate of property which is the subject of unauthorized postpetition transfers. See Section 549 of the Bankruptcy Code, which reads as follows:

"(a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

"(1) that occurs after the commencement of the case; and

"(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court."

This provision, together with the relevant and above quoted portion of section 541 of the Bankruptcy Code, which clearly makes the bequest a part of the bankruptcy estate, require the return of the bequest to that estate. The authority which is cited to the contrary is incompatible with the purposes of bankruptcy and is also wholly inapplicable to the factual and legal situation at bar.[3] The plain and unequivocal letter of the statute accordingly requires the turnover to the estate in bankruptcy. Even if the renunciation was effective under state law, the defendants who have been joined as parties in this adversary action have it within their power to restore the bequest to the bankruptcy estate and must do so if discharges in bankruptcy are to be granted.[4]

Accordingly, the court will for the moment withhold and reserve its ruling on whether advice of counsel is a sufficient and effective defense, under the circumstances of this case, to the within complaint objecting to discharge.[5] For, if the defendants fail and refuse to obey the order for turnover of the bequest to the bankruptcy estate, denial of discharge may be appropriate on that separate and independent ground.

### Jurisdiction and Power of the Bankruptcy Court

Because of the confusion, doubt and turmoil which currently exists on the question of bankruptcy court jurisdiction, it is imperative to conclude with a consideration of the jurisdiction and power under which this decision has been made. Currently, the controversy rages over whether former bankruptcy judges have jurisdiction under the recently-passed Bankruptcy Amendments Act of 1984.

■ It is a settled and fundamental principle of jurisdiction, however, that jurisdiction attaches at the time of the filing of an action and that the extent and character of jurisdiction is accordingly determined by the law in effect at that time.[6] Accordingly, the court need not, with respect to the action at bar, resolve the current controversy over jurisdiction. For, this action was filed prior to March 31, 1984, when, in

---

power not assignable under state law. We have no doubt that Congress has the power under Art. I sec. 8, cl. 4 of the Constitution to enact such a provision. The only question is whether it did so ..." *In re Detlefsen,* 610 F.2d 512, 516, n. 14 (8th Cir.1979). Once the bankruptcy laws make vest the right to acquire the interest in the trustee in bankruptcy or the bankruptcy estate, there is no right to renounce. *Bostian v. Milens,* 239 Mo.App. 555, 193 S.W.2d 797 (1946). It is recognized that, without the provision in bankruptcy law, the "devisee or legatee, *under a will,* is not bound to accept, but may disclaim or renounce his right under it, if he has not already accepted, and the renunciation relates back to the time the gift was made and that no estate vests in him." *Id.* 193 S.W.2d at 801. But the current Bankruptcy Code has superceded the right to renounce in a case such as that at bar.

**3.** See note 1, *supra.*

**4.** See note 2, *supra.*

**5.** It is the complaint of the plaintiff which sounds in part as a request to deny the debtors' discharges in bankruptcy. If the debtors refuse to turn over the property to the estate, then denial of discharge may be appropriate under § 727(a)(6)(A) of the Bankruptcy Code for failure "to obey any lawful order of the court."

**6.** See *Matter of Monson,* 46 B.R. 3 (Bkrtcy.W.D.Mo.1984), to the following effect:

"Further, jurisdiction ordinarily attaches as of the time of the filing of the petition or complaint to commence an action and its extend and character are ordinarily defined by the law in effect at that time. 'The time of filing suit is, of course, the critical date.' *Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 703 (1st Cir.1979). 'The general rule is that a

court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked ... And where, in view of the facts existing at the beginning of the proceedings, the court has acquired jurisdiction over a case, that jurisdiction is ordinarily not ousted by subsequent events.' 20 Am.Jur.2d *Courts*, section 142, p. 491 (1965). 'A court's jurisdiction in a case depends upon the facts which exist at the time the jurisdiction was invoked, i.e., at the time of the commencement of the action ... That jurisdiction is not ousted by subsequent events.' *In re Stahl, Asano, Shigetomi Associates*, 36 B.R. 179, 182 (Bkrtcy.D.Hawaii 1983). Thus, if the trustee's counterclaim can be regarded as having been tried by implication, as described in Rule 15(b), F.R.Civ.P., as of the date of the hearing in this action, September 2, 1982, then it is within the ambit of the pervasive jurisdiction formerly exercised by the bankruptcy court under section 1471(c), Title 28, United States Code, until the effective date of its striking, December 24, 1982. But, since that time, absent consent of the adverse claimant, the bankruptcy court has not been able to exercise jurisdiction over actions by a trustee against an adverse claimant.

"The current power of the bankruptcy court to act, also, is derivative of the power which existed at the commencement of the action. It is clear under the current situation enveloping the bankruptcy court that its pwoer to act is a question which is slightly different from its jurisdiction. As of this date, it is contended by some that the added tenure granted to bankruptcy judges by the Bankruptcy Amendments Act of 1984 is unlawful and that exercise of any power under that statute can only result in an order or judgment which is null and void. This is the position of the Administrative Office of United States Courts, which has insisted that former bankruptcy jduges, whose tenure, they insist, ended as of June 27, 1984, instead exercise judicial authority only as United States magistrates. On the other hand, others contend that the reappointment effected by the Bankruptcy Amendments Act of 1984 is not only effective but also renders any actions undertaken in bankruptcy cases by United States magistrates null and void. But this court need not resolve that dispute with respect to the actions at bar, which were filed long before the lapsing of the transition statute on June 28, 1982, created the seeming hiatus in the tenure of bankruptcy judges. As to this action, therefore, the undersigned simply sits in the status of a holdover judge until a successor is appointed. Both the relevant portion of the transition statute and general legal principles support this basis of judicial power. It is to be noted in this regard that the relevant portion of the transition statute,

section 404(b) of Public Law 95–598, originally purported to extend the term of a bankruptcy judge to 'March 31, 1984, *or when his successor takes office.*' (Emphasis added.) The successive Congressional extensions of the date of March 31, 1984, properly construed according to time-honored canons of construction, did not delete the language and effect of the initial minimal extension to the time when a successor lawfully takes office. For the form of the successive extensions was simply to replace 'March 31, 1984,' with subsequent dates, finally ending on June 27, 1984, and not to delete the language, 'or when his successor takes office.' In respect of each extension, a subsequent extension provided that the term of a sitting bankruptcy judge should 'expire on' the date on which the extension was to end. But this did not purport to end his holdover status as contained in the language, 'or when his successor takes office.' Accordingly, according to the lasting effect of the transition statute, the undersigned, as to the action at bar, continues to sit as a holdover judge.

"Further, under the general law, even in the absence of such a statutory provision, a judge whose term of office runs out ordinarily retains power to act, *de facto* if not *de jure*, until his successor is appointed, with respect to actions filed prior to the end of the term of office. 'There is authority that even in the absence of statute it is the right and duty of an incumbent judge to hold over and exercise the duties and functions of the office until his successor is appointed. But under such circumstances he is not a judge de jure, but at most a judge de facto. He merely performs the functions of the office until a duly qualified appointee appears, and then is bound to yield the office to the appointee ...' 16 Am. Jur.2d *Judges* section 16, pp. 105–106 (1969). This theory of *de facto* power of the sitting bankruptcy judges finds support in the very recent order issued in *Matter of Walker*, Civil Action No. 83–6005–CV–SJ (W.D.Mo. July 12, 1984), by the distinguished district judge of the St. Joseph Division, the Honorable Howard F. Sachs."

The Bankruptcy Amendments and Federal Judgeship Act of 1984 provides that its jurisdictional provisions take effect as of June 27, 1984. See Section 122(a) of P.L. 98–353. But, because of the doubt as to the validity of this jurisdictional provision and a suggestion by the Administrative Office of United States Courts that any orders and judgments issued by bankruptcy judges thereunder may be void, it seems better to rely upon the pre-existing jurisdictional provisions, which are those which are likely to be held to apply if the extension of bankruptcy judges tenure should ultimately be held to be

the absence of any statute, which directly conferred jurisdiction on the bankruptcy court, the bankruptcy court still exercised its inherent, nonstatutory jurisdiction of all matters necessary to the collection, administration and distribution of the bankruptcy estate.[7]  It is this form of jurisdiction, therefore, which applies to this action.[8]

The power of the bankruptcy court to act presents a slightly different question.[9]  As of this date, it is contended by some that the added tenure granted to bankruptcy judges by the Bankruptcy Amendments Act of 1984 is unlawful and that exercise of any power under that statute can only result in an order or judgment which is null and void.  This is the position of the Administrative Office of United States Courts, which has insisted that former bankruptcy judges, whose tenure, they insist, ended as of June 27, 1984, instead exercise judicial authority only as United States magistrates.[10]  On the other hand, others contend that the reappointment effected by the Bankruptcy Amendments Act of 1984 is not only effective but also renders any

void.  As is pointed out elsewhere, as to cases in which jurisdiction attached prior to June 27, 1984, the sitting bankruptcy judges have tenure as holdover judges under § 404(b) of P.L. 95–598.

7.  See, e.g., *Matter of Brown*, 26 B.R. 119 (Bkrtcy.W.D.Mo.1983); *Matter of Isis Foods, Inc.*, 26 B.R. 122 (Bkrtcy.W.D.Mo.1983).  The Denton complaint was filed prior to March 31, 1984, and jurisdiction can therefore be claimed under the principles as to all the issues therein raised.  See note 8, *infra*.

8.  As noted in the *Brown* and *Isis Foods* opinions, see note 7, *supra*, the power and jurisdiction exercised by the bankruptcy court as a matter of inherent, nonstatutory jurisdiction does not run any risk of engaging the federal judicial power defined in Article III of the United States Constitution precisely because the jurisdiction is not conferred by statute.  "[A]ll federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III, section I, of the Constitution." *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943).  After March 31, 1984, the Congress seems to have resurrected the same section 1471(c), Title 28, United States Code, as had been stricken in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and this must be regarded as a clear engagement of the Article III power as this court has previously noted in *Matter of Lenz*, 11 B.C.D. 1284, 39 B.R. 444 (Bkrtcy.W.D.Mo.1984).  The trustee's within complaint was filed on April 19, 1984, after these jurisdictional problems developed.  But this court believes that the trustee's complaint is only duplicative of that filed by Denton, see note 7, *supra*.  If not, however, this court has previously upheld bankruptcy court jurisdiction in the interregnum dating from April 1, 1984, on the basis of the district court decision in *Matter of Hamilton*, Civil Action No. 83–6070–CV–SJ (W.D.Mo. May 14,

1984).  See *Matter of Transport Clearings Midwest, Inc.*, 41 B.R. 528 (Bkrtcy.W.D.Mo.1984), to the following effect:

> "The new jurisdictional statute which was passed on March 29, 1984 ... appears to accomplish ... a simple resurrection of the jurisdictional statute which was stricken as unconstitutional in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) .... [T]he bankruptcy court ... must be held to be qualified to exercise the jurisdiction of an Article III court or else indulge in the vain exercise of void jurisdiction ....  In this respect, ... the bankruptcy court may rely upon a very recent decision of our district court in *Matter of Hamilton*, Civil Action No. 83–6070–CV–SJ (W.D.Mo. May 14, 1984), in which it was held that the bankruptcy court has no authority to render advisory opinions.  This seems to recognize—if not the constitutional status of the bankruptcy court—at least its authority to render decisions in an exercise of the federal judicial power.  For it is only constitutional courts which cannot render advisory opinions.  'A federal court that is not subject to the limitations of Article III may, of course, be required to render an advisory opinion.' 6A Moore's Federal Practice para. 57.12, p. 57–109, n. 2 (1983).  This court therefore concludes that the *Hamilton* decision may provide a basis for the bankruptcy court's current exercise of the federal judicial power."

9.  Power to act sometimes posits a different question than jurisdiction, as in the present situation when some claim the sitting bankruptcy judges to have no term of office remaining.

10.  See, e.g., the memorandum of July 11, 1984, of the Director of the Administrative Office of United States Courts, stating in part that "decisions by bankruptcy judges relying upon section 121 for their grant of judicial authority may all be invalidated, extensively disrupting the bankruptcy system and inconveniencing bankruptcy litigants."

actions undertaken in bankruptcy cases by United States magistrates null and void.[11]

■ But this court need not resolve that dispute with respect to the actions at bar, which were filed long before the lapsing of the transition statute on June 28, 1982, created the seeming hiatus in the tenure of bankruptcy judges. As to these actions, therefore, the undersigned simply sits in the status of a holdover judge, until a successor is appointed. Both the relevant portion of the transition statute and general legal principles support this basis of judicial power. It is to be noted in this regard that the relevant portion of the transition statute, section 404(b) of Public Law 95–598, originally purported to extend the term of a bankruptcy judge to "March 31, 1984, or when his successor takes office." The successive Congressional extensions of the date of March 31, 1984, properly construed according to time-honored canons of construction, did not delete the language and effect of the initial *minimal* extension to the time when a successor *lawfully* takes office.[12] Accordingly, according to the lasting effect of the transition statute, the undersigned, as to the action at bar, continues to sit as a holdover judge.

■ Further, under the general law, even in the absence of such a statutory provision, a judge whose term of office runs out ordinarily retains power to act, *de facto* if not *de jure*, until his successor is appointed, with respect to actions filed prior to the end of the term of office.[13] This

---

**11.** See the statements made by the Honorable Howard F. Sachs in support of his recent order in *Matter of Walker,* Civil Action No. 83–6005–CV–SJ (W.D.Mo. July 12, 1984).

**12.** It is a fundamental of statutory construction that the definite and specific takes precedence over the general. Thus, the explicit and particular language of § 404(b) that a bankruptcy judge should sit until his successor is appointed takes precedence over the subsequent section which does not specify whether there can be any period of holdover.

**13.** The current power of the bankruptcy court to act, also, is derivative of the power which existed at the commencement of the action. It is clear under the current situation enveloping the bankruptcy court that its power to act is a question which is slightly different from its jurisdiction. As of this date, it is contended by some that the added tenure granted to bankruptcy judges by the Bankruptcy Amendments Act of 1984 is unlawful and that exercise of any power under that statute can only result in an order or judgment which is null and void. This is the position of the Administrative Office of United States Courts, which has insisted that former bankruptcy judges, whose tenure, they insist, ended as of June 27, 1984, instead exercise judicial authority only as United States magistrates. On the other hand, others contend that the reappointment effected by the Bankruptcy Amendments Act of 1984 is not only effective but also renders any actions undertaken in bankruptcy cases by United States magistrates null and void. But this court need not resolve that dispute with respect to the actions at bar, which were filed long before the lapsing of the transition statute on June 28, 1984, created the seeming hiatus in the tenure of bankruptcy judges. As to this action, therefore, the un-

dersigned simply sits in the status of a holdover judge until a successor is appointed. Both the relevant portion of the transition statute and general legal principles support this basis of judicial power. It is to be noted in this regard that the relevant portion of the transition statute, section 404(b) of Public Law 95–598, originally purported to extend the term of a bankruptcy judge to "March 31, 1984, *or when his successor takes office.*" (Emphasis added.) The successive Congressional extensions of the date of March 31, 1984, properly construed according to time-honored canons of construction, did not delete the language and effect of the initial minimal extension to the time when a successor lawfully takes office. For the form of the successive extensions was simply to replace "March 31, 1984," with subsequent dates, finally ending on June 27, 1984, and not to delete the language, "or when his successor takes office." In respect of each extension, a subsequent extension provided that the term of a sitting bankruptcy judge should "expire on" the date on which the extension was to end. But this did not purport to end his holdover status as contained in the language, "or when his successor takes office." Accordingly, according to the lasting effect of the transition statute, the undersigned, as to the action at bar, continues to sit as a holdover judge.

Further, under the general law, even in the absence of such a statutory provision, a judge whose term of office runs out ordinarily retains power to act, *de facto* if not *de jure*, until his successor is appointed, with respect to actions filed prior to the end of the term of office. "There is authority that even in the absence of statute it is the right and duty of an incumbent judge to hold over and exercise the duties and functions of the office until his successor is appointed. But under such circumstances he is

theory of *de facto* power of the sitting bankruptcy judges finds support in the very recent order issued in *Matter of Walker*, Civil Action No. 83–6005–CV–SJ (W.D.Mo. July 12, 1984), by the distinguished district judge of the St. Joseph Division, the Honorable Howard F. Sachs.

Accordingly, it is concluded that the bankruptcy court has jurisdiction and power to issue the decree warranted by the law and the facts in the actions at bar. It is therefore

ORDERED AND ADJUDGED that, within 30 days of the date of entry of this order or within such additional time as the court may grant for good cause shown in writing within the same 30 days, the defendants turn over the above described bequest to the bankruptcy estate.