MAGILL, Circuit Judge.
In this tax refund action, William Russell Gibson, the bankruptcy trustee,[1] appeals from the district court’s order affirming the bankruptcy court’s granting of summary judgment for the Internal Revenue Service. Gibson argues on appeal that a bankruptcy trustee has the power, under 11 U.S.C. §§ 548, 549 (1988), to avoid a debt- or’s pre- and postpetition irrevocable elections to carry forward net operating losses under 26 U.S.C. § 172(b)(3)(C) (1988). We reverse and remand.
I.
This case has a peculiar procedural history, although the facts underlying the claim are straightforward. Herbert E. Russell filed a voluntary Chapter 11 bankruptcy petition on July 18, 1984. Russell managed the bankruptcy estate as a debtor-in-possession under 11 U.S.C. § 1107 until March 19, 1985, when Gibson and Martin were appointed co-trustees.[2]
The specific facts giving rise to this action involve Russell’s tax returns for the years 1982 and 1983. On August 12, 1983 (pre-bankruptcy petition), pursuant to an extension from the Internal Revenue Service (IRS), Russell filed his 1982 federal tax *415 return. On October 10, 1984 (post-bankruptcy petition), Russell filed his 1983 federal tax return, also pursuant to an extension. Both returns reflected substantial net operating losses (NOLs). NOLs are created when the taxpayer’s deductible business expenses for a given year exceed her net income for that year. 26 U.S.C. § 172(c). Once NOLs are sustained, the taxpayer may carry the loss back three years and use it as a deduction in that year. NOLs that remain are applied to the next two years and deducted accordingly. Id. § 172(b)(1)(A), (b)(2). If any loss remains at the end of the three-year carryback period, it is carried forward and deducted from the taxpayer’s income over the next fifteen years (or until it is exhausted), beginning with the year after the loss was initially sustained. Id. § 172(b)(1)(B). Alternatively, the Tax Code permits the taxpayer to forego the carryback option and instead use the NOLs exclusively in future years. Id. § 172(b)(3)(C). Such an election, once made, is irrevocable for that tax year. Id. In the returns, Russell elected to carry forward the NOLs and use them exclusively to offset future income, as opposed to carrying the NOLs back and using them to offset past income.
On February 17, 1986, the Trustee filed amended federal tax returns on behalf of the bankruptcy estate for the years 1976 through 1981. In these amended returns, the Trustee carried back the 1982 and 1983 NOLs and claimed a tax refund of $1,234,-134. The IRS effectively denied the refund claim by failing to approve it within the prescribed statutory period, and the Trustee filed a tax refund suit in the bankruptcy court on March 19, 1987.
The IRS moved for summary judgment on December 18, 1987, arguing that Russell’s pre- and postpetition elections were “irrevocable” under 26 U.S.C. § 172(b)(3)(C). The Trustee argued in opposition to the motion that he was not seeking to revoke the elections, but to avoid them as improper transfers from the bankruptcy estate under 11 U.S.C. §§ 548, 549. The Trustee argued that the elections made no economic sense, and that Russell only chose to carry forward the NOLs so that they would survive the bankruptcy proceedings and Russell could use them to offset future tax liability. The Trustee also argued that many issues of fact relating to the improper transfer remained, and that these disputed facts precluded summary judgment. The IRS responded that §§ 548 and 549 were inapplicable because the Trustee’s claim was for a tax refund. The IRS argued that refunds depend on whether deductions are allowed for NOLs, and that those deductions are determined under the Internal Revenue Code, not the Bankruptcy Code. The IRS contended that the Trustee was really seeking a deduction for the estate, one that Russell had already irrevocably elected not to take. The IRS also argued that even if § 549 was applicable, the Trustee was barred by a bankruptcy statute of limitations from raising it, and that because the Trustee did not allege §§ 548 and 549 violations in its refund petition, the court had no jurisdiction over the claims.
On June 21, 1988, the bankruptcy court granted the IRS’s motion for summary judgment. The bankruptcy court first determined that the Trustee’s tax refund claim was a “core proceeding” under 28 U.S.C. § 157(b)(2)(E), and that it thus had jurisdiction. The bankruptcy court noted that Russell had filed his tax returns on time and that he had elected to carry forward his NOLs. The court then held that under 26 U.S.C. § 172(b)(3)(C) the elections were irrevocable. The bankruptcy court refused to address the Trustee’s arguments about the elections constituting improper transfers and the existence of factual disputes because it believed that those issues were not properly raised in the Trustee’s pleadings. Accordingly, the bankruptcy court dismissed the Trustee’s suit.
On appeal, the district court affirmed the bankruptcy court’s judgment. The district court held that because the Trustee’s pleadings and administration refund claim did not allege §§ 548 and 549 violations, the Trustee was barred from raising them. The district court also determined that the IRS had not expressly or impliedly consent *416 ed to trying issues not raised in the pleadings, and thus that §§ 548 and 549 were not properly before it pursuant to Fed.R. Civ.P. 15(b).
The Trustee next appealed to this court. The Trustee’s brief raises two main arguments: first, that the §§ 548 and 549 issues were sufficiently raised for consideration; and second, that genuine issues of material fact exist that preclude summary judgment. In its brief, the IRS states that it wants to defend this case on the merits, not on the procedural grounds the lower courts found dispositive. Brief for Appellee at 9. The IRS specifically addresses the Trustee’s arguments concerning §§ 548 and 549. The Trustee’s reply brief states that he agrees with the IRS and wants this court to decide the merits of the case. Reply Brief for Appellant at 1. At oral argument, both parties repeated their wish that this court decide the case on the merits. Because the parties have now expressly consented to our deciding the case on the merits, see Fed.R.Civ.P. 15(a), we proceed with a review of the Trustee’s arguments.
II.
A. The Election and a Bankruptcy Trustee’s Avoidance Powers
The threshold issue in this case is whether a trustee’s powers under the Bankruptcy Code can be used to invalidate a debtor’s irrevocable election under the Tax Code. The parties have adduced no precedent directly addressing this issue, and we find nothing in the statutes that compels an answer. The IRS argues that Congress did not expressly authorize trustees to avoid irrevocable elections and that for this court to do so would create administrative chaos. The Trustee argues that to allow a debtor’s irrevocable election to bind bankruptcy trustees would enable debtors to deplete the bankruptcy estate and unjustly enrich themselves.
The purpose underlying the irrevocability of a § 172(b)(3)(C) election is to prevent a taxpayer from manipulating the Tax Code once the taxpayer discovers that a mistake has been made:
The statutory intent was to require the taxpayer, when making the election, to assume the risk that a carryback would later prove preferable. For example, if a taxpayer were to experience losses in succeeding years rather than the profits he expected when making the election, the irrevocability of his choice would prevent him from later changing course and carrying back a net operating loss to prior years as he might wish to do absent the election. The essence of the statute, then, is that a taxpayer unequivocally communicates his election and binds himself to his decision concerning the best use of his net operating loss.
Young v. Commissioner, 783 F.2d 1201, 1206 (5th Cir.1986). In this case, no taxpayer is seeking to escape the consequences of a past decision after discovering the decision was imprudent. Rather, a bankruptcy trustee is seeking to preserve a bankruptcy estate. Therefore, the purpose underlying § 172(b)(3)(C) is not directly at issue.
Congress has given bankruptcy trustees “extraordinary abilities to avoid and recover various liens and transfers” for the purpose of protecting the bankruptcy estate. In re Haugen Constr. Serv., Inc., 104 B.R. 233, 239 (Bankr.D.N.D.1989). These avoidance powers “are exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate,” Palmer & Palmer, P.C. v. United States Trustee (In re Hargis), 887 F.2d 77, 79 (5th Cir.1989), clarified, 895 F.2d 1025 (5th Cir.1990), and are so broad that they even enable trustees to avoid transfers considered “irrevocable” under state law. See Flanigan v. Lewis (In re Lewis), 45 B.R. 27, 29-30 (Bankr.W.D.Mo.1984). Unlike the purpose underlying § 172(b)(3)(C), the purpose underlying a trustee’s avoidance power is directly at issue in this case because the Trustee seeks to protect the bankruptcy estate from Russell’s allegedly improper transfers.
The risk in cases such as the one before us is that a debtor' may attempt to remove assets from the bankruptcy estate to the creditors’ detriment and for the debtor’s personal benefit. The key to this lies m 26 *417 U.S.C. § 1398(i), which provides that after a bankruptcy estate is terminated, the debt- or succeeds to the estate’s tax attributes, including its NOLs. The practical implication of this succession is that a debtor, aware of impending bankruptcy proceedings or during the course of such proceedings, may elect to carry forward her losses to deprive the bankruptcy estate of tax refunds that would result from carried-back NOL deductions. Because it is highly unlikely that the bankruptcy estate would generate enough income to offset the carried-forward NOLs, the debtor, after the estate’s closing, would have what remains of the fifteen-year period to apply the NOLs against her income. By so manipulating the Tax Code, a debtor deprives the bankruptcy estate of funds that would be used to satisfy the estate's creditors and avoids future tax liability.
We believe that the purpose underlying a bankruptcy trustee’s avoidance powers and the danger of permitting a debtor to manipulate improperly the Tax Code require that a trustee have the ability to avoid a debtor’s irrevocable election to carry forward NOLs under 26 U.S.C. § 172(b)(3)(C). This ability allows a trustee to avoid an election, not revoke it. Once an election is avoided, however, it is as if the election had never been made, and a trustee is free to elect as she sees fit.
Therefore, we believe a bankruptcy trustee may seek to avoid a debtor’s irrevocable election to carry forward NOLs.
B. Section 549 and the 1983 Return
The Trustee argues that Russell’s October 1984 election constitutes an unauthorized postpetition transfer in violation of the Bankruptcy Code. Section 549 of the Code permits a trustee to avoid a transfer of estate property that occurs after the commencement of the bankruptcy case and is not authorized by a court or the Code. 11 U.S.C. § 549(a). The IRS’s only response to the Trustee’s argument is that the Trustee is barred by the statute of limitations from asserting this claim. The IRS argues that because § 549 provides a bankruptcy cause of action, the bankruptcy statute of limitations applies. The Bankruptcy Code provides that an action or proceeding brought under § 549 must be commenced within two years of the transfer sought to be avoided. Id. § 549(d)(1). The IRS notes that Russell’s postpetition election occurred on October 10, 1984, and that the refund suit was not brought until March 19, 1987, twenty-nine months after the election. Thus, the IRS contends, the Trustee’s § 549 claim is untimely.
The IRS’s argument fails because the Trustee’s suit is not an action or proceeding under 11 U.S.C. § 549, but rather a refund suit under 28 U.S.C. § 1346(a)(1). The theory underlying the refund suit may involve a § 549 unauthorized postpetition transfer, but that does not make it a § 549 suit, and therefore § 549’s statute of limitations is inapplicable. Cf. Garcia v. Phoenix Bond & Indem. Co. (In re Garcia), 109 B.R. 335, 339 (N.D.Ill.1989) (holding that an action under 11 U.S.C. § 362 using § 549’s postpetition transfer theory is not subject to § 549’s limitations period). Tax refund suits are governed by 26 U.S.C. § 6532, which provides that no refund suit may be brought after two years from the date the IRS disallows the claim. The Trustee filed the amended returns with the refund claim on February 17, 1986. The IRS effectively denied his claim in June 1986 by not responding to it within 120 days, the statutory waiting period under § 6532(a)(5). The two-year statute of limitations did not expire, therefore, until June 1988. The Trustee filed his refund suit on March 19, 1987, and the suit is thus not time-barred.
To determine whether Russell’s October 1984 election constitutes an unauthorized postpetition transfer, we must examine the four elements of a § 549 claim. See Brown v. Harris (In re Auxano, Inc.), 96 B.R. 957, 960 (Bankr.W.D.Mo.1989). The first element, that the action takes place after the bankruptcy case begins, is clearly present. The second element, that property of the bankruptcy estate be involved, is also present. The property interest at issue here is not the potential million dollar refund, but rather the right to carry forward the NOLs: “[E]state property in- *418 eludes a debtor-in-possession’s right to carry forward an NOL.” Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.), 107 B.R. 832, 836 (Bankr.S.D.N.Y.1989), aff'd, 119 B.R. 430 (S.D.N.Y.1990). Therefore, when Russell, as debtor-in-possession, elected to carry forward the 1983 NOLs, his election involved property of the bankruptcy estate. The third element, that the debtor transfer the property,-is also present. The Bankruptcy Code defines transfer as “every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property.” 11 U.S.C. § 101(50) (1988). Congress intended this definition to be as broad as possible. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Russell’s irrevocable election constitutes a transfer because he “disposed” of the bankruptcy estate’s right to carry forward the NOLs: once Russell made the election, it could not be changed. Therefore, Russell transferred property of the estate.
The fourth element of § 549 is that the transfer not be authorized by any court or statute. Russell’s election was not authorized by a court, so we turn to .the Bankruptcy Code to determine if any of its provisions authorized Russell’s transfer. After filing for Chapter 11 bankruptcy, Russell was appointed debtor-in-possession. A debtor-in-possession has almost all of the rights, powers, and duties of a Chapter 11 trustee. 11 U.S.C. § 1107(a). This includes the power to operate the debtor's business. Id. § 1108. Thus, the issue for determination is whether Russell elected to carry forward the NOLs in the ordinary course of business. The IRS appears to argue, although its brief is far from clear on this point, that Russell’s filing of his tax returns was in the ordinary course of business. That may be true, but it does not address whether the election was in the ordinary course of business. Unfortunately, because of the procedural history of this case, there is virtually no evidence in the record concerning this issue. We must, therefore, remand the case for a determination of whether Russell’s election to carry forward the NOLs was in the ordinary course of business.
C. Section 548 and the 1982 Return
The Trustee next argues that Russell’s election on his 1982 tax return to carry forward his NOLs constitutes a fraudulent transfer under the Bankruptcy Code. 11 U.S.C. § 548(a)(1) permits a trustee to avoid a debtor’s transfer of property made within one year of filing for bankruptcy if the debtor intended to hinder, delay, or defraud any creditor. The Trustee argues that because Russell elected to carry forward his NOLs on August 12, 1983, less than one year before his bankruptcy filing on July 18, 1984, and because the election was designed to keep the tax refunds from going to the eventual bankruptcy estate, the election can be avoided.
The IRS’s primary response to this argument is that the Bankruptcy Code prevents the Trustee from changing the tax attributes of Russell’s bankruptcy estate. The IRS specifically argues that 26 U.S.C. § 1398(g)(1), which provides that a bankruptcy estate succeeds to the debtor’s NOLs that exist as of January 1 of the year bankruptcy is declared, freezes the NOL carryforwards as they existed on January 1, 1984. As a result, the IRS concludes, the Trustee is barred from attempting to avoid the prepetition election because the election was made, and the NOLs carried forward, before January 1, 1984.
The IRS’s argument ignores the specific focus of the Trustee’s argument in this case. The Trustee seeks to avoid Russell’s August 1983 election. It is the election that is challenged, not the current status of the NOLs. If the Trustee succeeds in avoiding the election, and then makes a valid election, NOLs will belong to the bankruptcy estate. It would be as if the NOLs that resulted from Russell’s August 1983 election never existed at all, thus leaving nothing to which the bankruptcy estate could have succeeded.
To determine whether Russell’s August 1983 election constitutes a fraudulent *419 transfer, we must determine whether the requirements of § 548(a)(1) are met. We have already determined that an election under 26 U.S.C. § 172(b)(3)(C) is a transfer of property. See supra II. B. The election took place within one year of Russell declaring bankruptcy. Thus, the first three requirements of § 548(a)(1) are present. Again, because of the posture of this case, we are unable to determine from the record whether the fourth requirement is satisfied, namely whether Russell actually intended to hinder, delay, or defraud any existing or future creditors. Therefore, we also must remand for a determination of this issue.
III.
For the foregoing reasons, we direct that this case be remanded to the district court with instructions that it be returned to the bankruptcy court. The bankruptcy court shall determine whether Russell’s October 1984 election to carry forward the NOLs was in the ordinary course of business, what Russell’s intent in making the August 1983 election was, and conduct other proceedings consistent with this opinion.

. F.H. Martin was Gibson’s co-trustee in the bankruptcy proceedings, but is now deceased.

. For clarity’s sake, future references to Gibson and Martin as co-trustees, or Gibson as the lone trustee, will be "Trustee."