In re Herbert E. RUSSELL, Debtor.

Thomas S. STREETMAN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Bankruptcy No. ED 84–058M.
Adv. No. AP 87–103M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

April 23, 1993.

Charles W. Baker, Little Rock, AR, for plaintiff.

Susan Gunter, Little Rock, AR, for debtor.

Thomas S. Streetman, Crossett, AR, Trustee.

John D. Russell, Washington, DC, for defendant.

### MEMORANDUM OPINION

JAMES F. MIXON, Chief Judge.

On July 18, 1984, Herbert E. Russell (debtor) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. Russell served as debtor in possession until March 19, 1985, when William Russell Gibson and F.H. Martin were appointed co-trustees.[1] Thomas S. Streetman, was appointed successor trustee and currently serves in that capacity.

On March 19, 1987, the trustee commenced a tax refund suit in this court against the Internal Revenue Service. On June 21, 1988, an order was entered granting the IRS's motion for summary judgment, which was affirmed by the district court on October 4, 1989. *Gibson v. United States (In re Russell)*, No. 88–1112 (W.D.Ark. Dec. 5, 1989). On March 7, 1991, the Eighth Circuit Court of Appeals reversed and remanded the case to the district court with instructions to remand to this court for trial of two specific issues. *Gibson v. United States (In re Russell)*, 927 F.2d 413 (8th Cir.1991). Trial on the merits was held in March, 1992, and the case was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) (1988), and this court has jurisdiction to enter a final judgment in the case. The following constitutes the Court's findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052.

### DISCUSSION

In 1980, the debtor was engaged in the oil and gas exploration business under a corporate entity known as Rustex Oil, Inc., (Rustex). The debtor owned 90% of the Rustex stock and the debtor's son, Wayne Russell, owned the remaining 10% of the Rustex stock. In 1981, the debtor sold a significant portion of Rustex's oil production rights in the Dorechet Macedonia field in Columbia County, Arkansas, for a net sales price of $24,793,832.00. The debtor's cost basis in the property sold was only $28,445.00, therefore, the sale created a $24,765,387.00 capital gain in the tax year 1981. After the debtor paid other obligations in 1981, he retained around $13 million in cash.

In an effort to take advantage of his newly acquired wealth, the debtor commenced numerous business activities and made numerous investments. He built condominiums in Texas, invested in several limited partnerships, bought a commuter airline, purchased timber land and row crop farmland, engaged in the oil and gas production and exploration business, purchased a trucking company, purchased companies that manufactured specialty equipment for oil and gas production, purchased an airplane hanger, purchased oil and gas leases, invested in time share and condominium projects, purchased furniture and leased it to a hotel, purchased race horses, purchased land for speculation, invested in a company that made plastic pipe used in the oil and gas business, and numerous other business enterprises. The debtor testified that he had no trouble borrowing money from banks and other lenders in connection with his business activities. One of his principal lenders was Allied Bank of Houston, Texas.

The debtor's business activities and investments were unsuccessful, and as a result of these business activities, the debtor generated significant net operating losses. The debtor's 1981 tax return reflected total losses of $2,908,977.00 and taxable income of $9,839,623.00. The debtor paid $4,952,-972.00 in federal income taxes for the tax year 1981.

---

1. F.H. Martin is now deceased.

The debtor's 1982 tax return reflected total losses of $6,201,455.00 and taxable income of negative $6,912,060.00. This resulted in a net operating loss for the 1982 tax year of $6,129,167.00. The debtor filed his 1982 federal tax return on September 12, 1983, and elected to carry the 1982 NOL forward. The debtor's 1982 tax return was prepared by John Burton, a certified public accountant.

The debtor's 1983 tax return reflected total losses of $3,905,091.00 and taxable income of negative $10,104,523.00. This resulted in a net operating loss for the 1983 tax year of $3,891,604.00. On August 26, 1984, The debtor filed his 1983 tax return and elected to carry the 1983 NOL forward. The 1983 tax return was prepared by Douglas Frazier, a certified public accountant.

The Court of Appeals explained the effect of the debtor's elections to carry the 1982 and 1983 NOLs forward as follows:

> Once NOLs are sustained, the taxpayer may carry the loss back three years and use it.as a deduction in that year. NOLs that remain are applied to the next two years and deducted accordingly.... Alternatively, the Tax Code permits the taxpayer to forego the carryback option and instead use the NOLs exclusively in future years.... Russell elected to carry forward the NOLs and use them exclusively to offset future income as opposed to carrying the NOLs back and using them to offset past income.

*Gibson*, 927 F.2d at 415.

The debtor testified that he had significant cash flow problems beginning in 1981 and the problems grew more severe in the subsequent years of 1982, 1983, and 1984. In 1983, the debtor sought professional advice from his accountants and other experts on the cash flow problem. In an effort to improve his financial condition, various initiatives were implemented. The debtor attempted to sell some of his real estate; however, the real estate market had significantly declined and the property did not sell. Oil prices also declined significantly, and many of the oil and gas related

limited partnerships in which the debtor had invested filed bankruptcy.

In 1983, most of debtor's businesses had a negative cash flow and Allied Bank was putting pressure on the debtor to repay its loans. On July 18, 1984, pressure from creditors ultimately forced the debtor to file a voluntary petition for relief in bankruptcy.

The debtor's 1984 tax return was filed in his capacity as a debtor-in-possession and reflected total losses of $1,231,038.00 and taxable income of negative $11,196,445.00. Each year since the case was filed, the estate has generated negative taxable income. On February 17, 1986, the trustee for the debtor filed amended tax returns for the years 1976 through 1983 and carried back the 1982 and 1983 NOLs, which reversed the debtor's previous elections to carry the NOLs forward. When the IRS declined to accept the amended returns, the trustee initiated this tax refund action.

The parties stipulated that if the 1982 NOL had been carried back instead of forward, the election would have resulted in a $232,636.00 tax refund. In addition, if the 1983 NOL alone had been carried back, the debtor-in-possession would have been entitled to a $34,359.00 tax refund. The parties further stipulated that if both the NOLs had been carried back, the debtor would have been entitled to a tax refund of $232,636.00 for 1982 and $972,902.00 for 1983, which is a total tax refund of $1,205,-536.00. The parties stipulated that, if any refunds are due, the refunds should accrue interest pursuant to the applicable provisions of the Internal Revenue Code.

## I

### 1982 NOL Election

**Actual Fraud Under 11 U.S.C. § 548(a)(1)**

■ A debtor's entitlement to the benefits of an NOL is property of the estate and may be exercised for the benefit of the estate. *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417–18 (citing *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines,*

*Inc.),* 107 B.R. 832, *aff'd,* 119 B.R. 430 (S.D.N.Y.1990)).

■ Although the election to carry forward an NOL is an irrevocable election,[2] the Eighth Circuit Court of Appeals has determined that "a trustee may seek to avoid a debtor's irrevocable election to carry forward NOLs" under the avoiding powers granted to a trustee under 11 U.S.C. § 548 (1988). *Gibson,* 927 F.2d at 417. The applicable provisions of the Bankruptcy Code provide as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted. . . .

11 U.S.C. § 548(a)(1) (1988).

The trustee correctly asserts that the Eighth Circuit has already found that there was a transfer of an interest of the debtor in property (the election) made within one year before the petition was filed. The Court of Appeals remanded the case to this Court with instructions to determine if the debtor made the election with actual intent to hinder, delay, or defraud existing or future creditors of the estate. *Gibson,* 927 F.2d at 419.

The debtor has never prepared an income tax return and has always relied on professional accountants to prepare his returns. The debtor was not knowledgeable regarding tax law and had no personal involvement in completing the 1982 return. The debtor testified that he did not know he would have been entitled to an income tax refund if he had elected to carry his 1982 NOL back instead of forward. The debtor's businesses were experiencing serious cash flow problems and a tax refund would

have been helpful. The consequence of making the forward election for the 1982 NOL was not known until the latter part of 1983 when estimated income figures for 1983 became available.

Joy Wolfe, who was one of the debtor's in-house accountants, testified that the debtor was "uninformed" regarding tax laws. She corroborated the debtor's testimony that he relied completely upon the advice he was given by his accountants. She stated that is was John Burton, C.P.A., who made the decision to carry the 1982 NOL forward. Burton told her there was no benefit to be gained by carrying the 1982 NOL back.

■ Reliance by a debtor on professional advice has been used to establish that a debtor lacked the requisite intent to hinder, delay, or defraud creditors. *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir.1986). The reliance must be in good faith, *Adeeb,* 787 F.2d at 1343, and reasonable, *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 876 (8th Cir.1988) (citing *In re Bateman,* 646 F.2d 1220, 1224 (8th Cir.1981)).

■ Under the facts in this case, the debtor reasonably and in good faith relied upon the advice of his experts even though the advice was imprudent. In order to establish fraud under 11 U.S.C. § 548(a)(1), the trustee must show, by clear and convincing evidence, "that the transferor acted under circumstances that precludes any reasonable conclusion other than that the purpose of the transfer was fraudulent as to his creditors." 4 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 548.02[5] (15th ed. 1993). The trustee has failed to prove by even a preponderance of the evidence that the debtor actually intended to defraud creditors by electing to carry his 1982 NOL forward, therefore, the 1982 NOL election may not be set aside under the provisions of 11 U.S.C. § 548(a)(1) (1988).

**2.** *See* 26 U.S.C. § 172(b)(3)(C).

## II

### 1982 NOL Election

### Constructive Fraud Under
### 11 U.S.C. § 548(a)(2)

Both parties devote most of their evidence and argument on the issue of whether the 1982 NOL election should be set aside as a constructive fraudulent conveyance. The pertinent portion of 11 U.S.C. § 548(a)(2) is as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(2) (1988).

The United States has never raised the issue that constructive fraud was beyond the scope of the Eighth Circuit Court of Appeals' mandate; however, this Court is compelled to raise the issue, *sua sponte*, because it is jurisdictional. The Eighth Circuit never mentioned the provision of 11 U.S.C. § 548(a)(2); it only discussed the issue of actual fraud. The Eighth Circuit's opinion in *Gibson* stated "because of the posture of this case, we are unable to determine from the record whether the fourth requirement is satisfied, namely whether Russell actually intended to hinder, delay, or defraud any existing or future creditors. Therefore, we also must remand for a determination of this issue. . . . The bankruptcy court shall determine . . . what Russell's intent in making the August 1983 election was. . . ." *Gibson*, 927 F.2d at 419.

The Eighth Circuit Court of Appeal's opinion is a mandate to the bankruptcy court. *See* James W. Moore & Bernard J. Ward, *Moore's Federal Practice* ¶ 241.-02[1] (2d ed. 1991); Fed.R.App.P. 41. This Court is without jurisdiction to consider any issue except as stated in the mandate. *Houghton v. McDonnell Douglas Corp.*, 627 F.2d 858 (8th Cir.1980); *Nucor Corp. v. Tennessee Forging Steel Serv., Inc.*, 513 F.2d 151 (8th Cir.1975); *Paull v. Archer–Daniels–Midland Co.*, 313 F.2d 612 (8th Cir.1963). The Court of Appeals made the finding that three of four elements required to sustain a judgment in favor of the trustee have been established. The Court also determined that the fourth element, whether the debtor actually intended to hinder, delay, or defraud any existing or future creditor, has not been determined. The Eighth Circuit remanded the case with instructions that this Court determine whether the fourth element has been met. *Gibson*, 927 F.2d at 419. Since the debtor's intent is not an element of 11 U.S.C. § 548(a)(2), the Court of Appeals did not empower this Court to consider any issue arising under 11 U.S.C. § 548(a)(2). Therefore, the election may not be set aside under this section.

## III

### 1983 NOL Election

### Postpetition Unauthorized Transfer
### Under 11 U.S.C. § 549

The Eighth Circuit Court of Appeals determined that the debtor's postpetition election to carry forward his 1983 NOL is subject to being set aside under 11 U.S.C. § 549 (1988) as an unauthorized transfer of property, unless the transfer is deemed to have occurred in the ordinary course of the debtor's business. The case was remanded with instructions that this court determine whether "Russell's October 1984 election to carry forward the NOLs was in the ordi-

nary course of business." *Gibson*, 927 F.2d at 419.

Under 11 U.S.C. § 1108 (1988), a debtor-in-possession may operate the debtor's business provided the Court does not order otherwise. 11 U.S.C. § 363(b) (1988) limits the debtor-in-possession's authority to operate its business by providing that a debtor-in-possession "after notice and a hearing, may use sell, or lease, other than in the ordinary course of business, property of the estate." *See Burlington N.R.R. v. Dant & Russell, Inc. (In re Dant & Russell)*, 853 F.2d 700 (9th Cir.1988). Neither the Bankruptcy Code, nor the legislative history of § 363(c) offers guidance as to what constitutes ordinary course of business. *Committee of Asbestos–Related Litigants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 60 B.R. 612 (Bankr.S.D.N.Y.1986).

Many courts utilize the two-pronged test first advanced by Judge Kressel in the case of *Johnston v. First Street Companies (In re Waterfront Companies, Inc.)*, 56 B.R. 31 (Bankr.D.Minn.1985). These tests are known as the horizontal dimension test and the vertical dimension or creditor expectation test. The horizontal dimension test involves:

> compar[ing] this debtor's business to other businesses and based on the kind of business it is in, we decide whether a type of transaction is in the course of that debtor's business or in the course of some other business. Thus raising a crop would not be in the ordinary course of business for a widget manufacturer because that is not a widget manufacturer's ordinary business.

*Id.* at 35. The vertical dimension test or creditor expectation test was stated by Judge Kressel as:

> the apparent purpose of requiring notice only where the use of property is extraordinary is to assure interested persons of an opportunity to be heard concerning transactions different from those that might be expected to take place so long as the debtor in possession is allowed to continue normal business operations under 11 U.S.C. § 1107(a) & § 1108.

> The touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's (sic) chapter 11 status, not the particular transactions themselves.

*Id.* (quoting with approval *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 394 (S.D.N.Y.1983)). *See also In re Roth American, Inc.*, 975 F.2d 949 (3d Cir.1992); *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (M.D.Tenn.1990). Applying the facts in the present case to the two-pronged test as stated above, the debtor's election to carry forward the 1983 NOL election was made in the ordinary course of business.

The election to carry forward the 1983 NOL was made in connection with a tax return required to be filed. *See* 11 U.S.C. § 1107 (1988) (debtor in possession has same duties as trustee in chapter 11); 11 U.S.C. § 1106(a)(6) (1988) (trustee has duty to file tax return required by law to be filed by the debtor); *Holywell Corp. v. Smith*, —— U.S. ——, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992). The United States's expert witness testified that at the time the 1983 NOL election was made, at least 250 elections were permitted by the Internal Revenue Code. A debtor who has gross income would be expected to make the applicable elections and file tax returns, which are required by law, in the ordinary course of his business. Creditors of a debtor would also reasonably expect applicable elections to be made and tax returns filed in the ordinary course of business.

The fact that the debtor's tax advisors were unreasonably optimistic or negligent does not transform the activity in question from ordinary course of business to not ordinary course of business. The 1983 NOL election was made under circumstances similar to the 1982 NOL election, and these circumstances do not support a finding of fraud or bad faith. Business

decisions are routinely made in circumstances which unquestionably constitute ordinary course of business and which result in economic loss. The debtor did not act in bad faith. Absent a showing of bad faith or fraud, the debtor's act of exercising a tax election is in the ordinary course of business.

 The substance of the trustee's argument addresses itself to the fact that the debtor declined a $34,359.00 tax refund by virtue of making the NOL election. The trustee argues that the decision to forego a tax refund was either fraudulent or negligent, or both. The trustee points to those cases where a debtor's declination of an inheritance was determined not to be in the ordinary course of business as support for his proposition. *See Williams v. Chenoweth (In re Chenoweth)*, 132 B.R. 161 (Bankr.S.D.Ill.1991). However, the distinction here is that the debtor did receive a contingent benefit in return for the election which could have benefited the estate if certain events had transpired in the future including confirming a plan of reorganization which provided for ongoing business activities. Therefore, applying both the horizontal test and the vertical test, the 1983 NOL election was made in the ordinary course of business and was not an unauthorized transfer of property.

IT IS SO ORDERED.