SILVERMAN, Circuit Judge:
This case presents a conflict between provisions of the Bankruptcy Code and the Internal Revenue Code. Under Internal Revenue Code § 172, a taxpayer’s election to forego a net operating loss carryback is “irrevocable.” Under Bankruptcy Code § 548, a bankruptcy trustee may avoid “any transfer” of an interest of the debtor in property when made under conditions set forth in the statute as a fraudulent transfer. In this case, a trustee sought to avoid as fraudulent an election to forego a net operating loss carryback. The issue is whether bankruptcy law trumps the tax code or vice versa. We hold that a bankruptcy trustee’s § 548 avoidance powers take precedence over the otherwise irrevocable nature a § 172 election, and therefore, that a trustee may avoid such a tax election as a fraudulent transfer. The decisions of the Bankruptcy Appellate Panel and the bankruptcy court are affirmed.
I. Facts
The facts of this case are undisputed. In October of 1994, James and Carol Feiler filed a properly-extended federal tax return for the 1993 tax year reflecting net operating losses (“NOLs”) of $971,930. Under the tax code in effect in 1993, a taxpayer had two choices for dealing with NOLs. The taxpayer could have done nothing, in which case the NOLs first would be carried back and applied to each of the three taxable years preceding the year of the loss.[2] See I.R.C. § 172(b)(1)(A).[3] The remainder of the NOLs, if any, then would be carried forward and applied against each of the next fifteen taxable years following the year of the loss. See I.R.C. § 172(b)(1)(A). Under the second option, a taxpayer could have made an affirmative and irrevocable election to waive the carry-back provision, and carry the entirety of *951 the NOLs forward to be applied against income in future tax years. See I.R.C. § 172(b)(3). On their 1993 tax return, prepared by a certified public accountant, the Feilers chose the second option and made an election under I.R.C. § 172(b)(3) to waive the carryback on $971,930 in NOLs, and carried forward the losses to be applied against future tax liability. The parties agree that absent the election to carry forward the NOLs, the Feilers would have been entitled to tax refunds on the carry-back of approximately $287,493.
On March 29, 1995, five months after making the I.R.C. § 172(b)(3) election, the Feilers filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. In February 1997, Edward F. Towers, who had been appointed as Chapter 7 trustee of the Feilers’ bankruptcy estate, filed income tax refund requests with the Internal Revenue Service on behalf of the estate totaling $287,493 for the tax years 1990 and 1991, reflecting the tax refund that the Feilers would have been entitled to from the NOL carryback had they not instead elected to carry forward their NOLs. The IRS disallowed both claims for refunds on the ground that the Feilers had made an irrevocable election to carry the NOLs forward, therefore the trustee could not revoke the election either.
On March 27, 1997, the trustee filed an adversary proceeding against the government seeking to avoid the Feilers’ election as a fraudulent transfer under B.C. § 548. The trustee’s theory was that the Feilers had deprived the bankruptcy estate of the benefit of the tax refund by waiving the carryback in order to preserve the future benefits of the NOLs for themselves after bankruptcy.[4]
On March 3, 1998, the bankruptcy court granted summary judgment in favor of the bankruptcy trustee. The government appealed to the Ninth Circuit Bankruptcy Appellate Panel (“BAP”) and on February 9, 1999, the BAP entered an order affirming the bankruptcy court. The government filed a timely notice of appeal on April 5,1999.
The government concedes that three of the four requirements for a fraudulent transfer under B.C. § 548(a)(1)(B) are present in this case: (1) the election was exercised on or within one year of the Feilers’ bankruptcy filing; (2) it was in return for future tax benefits with a value that is “less than, and not reasonably equivalent to” the value of the tax refund that was relinquished when the election was exercised; (3) it was while the Feilers were insolvent. The only dispute is whether B.C. § 548 can ever be used to avoid an I.R.C. § 172(b)(3) election, and if so, whether the election satisfied the fourth requirement of B.C. § 548, i.e., that the election was a transfer of an interest of the Feilers in property.
II. B.C. § 548 Avoidance Powers and I.R.C. § 172(b)(3) Election
A. Standard of Review
This court independently reviews a bankruptcy court’s rulings on appeal from the BAP. See In re Tuli, 172 F.3d 707, 709 (9th Cir.1999). A bankruptcy court’s rulings on summary judgment are reviewed de novo. See Schwartz v. United States, 67 F.3d 838, 839 (9th Cir.1995). Issues of law and issues of statutory interpretation are also reviewed de novo; See Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir.1997); Villegas-Valenzuela v. INS, 103 F.3d 805, 809 (9th Cir.1996).
*952 B. The Statutes
I.R.C. § 172(b)(3) provides:
Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer’s return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for such taxable year.
(Emphasis added).
B.C. § 548(a)(1) says:
The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation ....
(Emphasis added)
The government argues that the language of I.R.C. § 172(b)(3), making an election to waive the carryback period “irrevocable,” coupled with the language of I.R.C. § 1398(g)(1), providing that the bankruptcy estate succeeds to the NOLs of the debtor-taxpayer, means that Congress clearly intended to place an I.R.C. § 172(b)(3) election to waive the carryback period beyond the trustee’s B.C. § 548 avoidance powers. The trustee contends that nothing in either the tax or bankruptcy codes excludes such an election from the broad powers a trustee enjoys to avoid fraudulent transfers under B.C. § 548.
It is true that I.R.C. § 172(b)(3) states that the election to waive the carry-back, “once made for any taxable year, shall be irrevocable for such taxable year.” However, the bankruptcy trustee is not constrained by only being able to act as the debtor could; while the trustee succeeds to the tax attributes of the debtor-taxpayer, he does not represent the debt- or-taxpayer’s interests. Rather, the trustee’s duty is to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor’s creditors. To accomplish this duty, it is well recognized that B.C. § 548 gives a trustee power to avoid transactions by which a debtor would otherwise be bound, including transfers considered irrevocable by state law. See Gibson v. United States (In re Russell), 927 F.2d 413, 416 (8th Cir.1991) (citing Flanigan v. Lewis (In re Lewis), 45 B.R. 27, 29 (Bankr.W.D.Mo.1984)). In fact, had Congress only intended that a trustee be able to avoid transactions that were otherwise revocable by the debtor, there would be no reason to grant the trustee extraordinary B.C. § 548 avoidance powers at all. Therefore, the mere fact that a transaction is irrevocable by a debtor is not helpful in determining whether it may be avoided by a trustee under B.C. § 548.
C. Effect of I.R.C. § 1398
In an attempt to distinguish the bankruptcy trustee’s avoidance powers, the government claims that I.R.C. § 1398 places an I.R.C. § 172(b)(3) election beyond the trustee’s B.C. § 548 avoidance powers. I.R.C. § 1398 states in pertinent part:
(g) Estate succeeds to tax attributes of debtor.' — The estate shall succeed to and *953 take into account the following items (determined as of the first day of the debtor’s taxable year in which the case commences) of the debtor—
(1) Net operating loss carryovers.— The net operating loss carryovers determined under [I.R.C.] section 172.
In this case, the NOL carryovers had already been determined as of the first day of the taxable year in which the case commenced because the Feilers had already made their election to waive the carryback in the previous year. Therefore, the government claims, the bankruptcy trustee is stuck with the Feilers’ NOL carryover, whatever it may be.
We believe this argument misses the point. A trustee would be stuck with the NOL carryover unless the trustee has the power to avoid the election that waived the carryback and gave rise to the carryover in the first place. What a trustee “succeeds to” under I.R.C. § 1398 is not the same as what he may avoid under B.C. § 548; what property is part of the bankruptcy estate and what property may be recovered with a trustee’s avoidance powers are two separate questions. I.R.C. § 1398 merely allocates the NOLs as bankruptcy estate property. Whether the election to carry forward the NOLs is a fraudulent transfer is another question, and depends on B.C. § 548.
Generally, a trustee “succeeds to” the debtor’s interest in property pursuant to B.C. § 541(a)(1), but retains the right to use his B.C. § 548 powers to avoid the obligations of many transactions that he “succeeded to” from the debtor in order to recover property for the estate. Once avoided, the transaction is a nullity and is treated as if it never happened. We hold that this general rule of bankruptcy applies with equal force in this case.
' Besides being unsupported by the text of the statutes at issue, the government’s argument that I.R.C. § 1398 was intended by Congress as a rejection of the trustee’s B.C. § 548 avoidance powers does not make sense in light of the background and legislative history of I.R.C. § 1398 and the strange consequences such an interpretation would entail. The Bankruptcy Tax Act of 1980, of which I.R.C. § 1398 was a part, was enacted to “‘provide the first comprehensive statutory treatment’ of ‘how tax attributes are to be allocated between the estate and the debtor.’ ” H.R.Rep. No. 96-833 at 19; S.Rep. No. 96-1035 at 24, 1980 U.S.C.C.A.N. at 7017, 7039. Prior to the Bankruptcy Tax Act of 1980, the IRS had taken the position that the bankruptcy estate was an entirely new entity rather than one that simply succeeded to the debtor’s tax attributes, and therefore required the filing of a separate tax return if the income from the bankruptcy estate was over $600. See In re Turboff, 93 B.R. 523, 525 (Bankr.S.D.Tex.1988). In light of the uncertainty in allocating tax attributes between the estate and debtor, I.R.C. § 1398 was intended simply to address the question of whether or not the taxpayer’s NOLs were even property of the bankruptcy estate or were instead retained by the debtor. Congress intended that NOLs not be beyond the trustee’s grasp. Instead, this valuable asset was to be used for the benefit of the estate.
Our holding today does not render I.R.C. § 1398 meaningless. I.R.C. § 1398 determines what tax attributes of the debt- or rightfully belong in the bankruptcy estate, and covers those situations when there has been no fraudulent transfer or election by the taxpayer, but when the taxpayer, for whatever reason, has NOLs that may be applied against future tax burdens of the bankruptcy estate. B.C. § 548, on the other hand, allows a trustee to avoid transfers of property that should have been the property of the estate, but for an improper transfer.
D. Midlantic Nat’l Bank and the “Extraordinary Exemption” from Non-bankruptcy Law
The government relies heavily on the Supreme Court’s admonition that “[i]f *954 Congress wishes to grant the trustee an extraordinary exemption from nonbank-ruptcy law, ‘the intention would be clearly expressed.’ ” Midlantic Nat’l Bank v. New Jersey Dep’t of Envtl. Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Midlantie Nat’l Bank, however, involved a bankruptcy trustee who attempted to exercise his B.C. § 554(a) abandonment power to abandon over 470,-000 gallons of the debtor’s carcinogen-contaminated waste oil, in violation of state environmental law and posing a threat to public safety. The Court found that in enacting B.C. § 554, Congress had also intended to codify the previous judge-made bankruptcy abandonment rule, including an exception that when state law or equitable principles protected public interests, those public interests would prevail over the abandonment power. The Midlantie Nat’l Bank court found that the serious public health and safety concerns raised by simply allowing the trustee to abandon the contaminated oil trumped the trustee’s § 554 abandonment power. This is what the oft quoted passage specifically refers to — had Congress intended to allow a trustee to violate environmental laws and endanger public safety to abandon a financially burdensome asset, Congress would have made that intention clear.
The public health and safety concerns that were present in Midlantie Nat’l Bank are not implicated in this case, nor is there any argument that in conferring broad avoidance powers on the trustee, Congress intended to exempt tax transactions from those powers. Furthermore, the government’s snippet from Midlantie Nati Bank is misplaced' — Congress has granted the bankruptcy trustee an “extraordinary exemption” to non-bankruptcy law by conferring B.C. § 548 avoidance powers to allow the trustee to avoid any number of transactions that would otherwise be final and irrevocable by the debtor under non-bankruptcy law. The real question is on what basis the government claims an “extraordinary exemption” from bankruptcy law and a trustee’s B.C. § 548 avoidance powers.
I.R.C. § 1398 does not provide an “extraordinary exemption” from a trustee’s avoidance powers. As discussed above, I.R.C. § 1398 simply allocates property to the bankruptcy estate. There is no indication that in enacting I.R.C. § 1398, Congress intended to put an election to forego a tax refund and carry forward NOLs beyond the scope of B.C. § 548 avoidance powers.
E. Tax and Bankruptcy as a Statutory Scheme
The government also asserts that allowing a trustee to avoid an I.R.C. § 172(b)(3) election will upset a carefully crafted statutory scheme, undermine the policy behind I.R.C. §§ 172 & 1398, and cause chaos in the administration of the tax laws. However, the trustee’s position is not inconsistent with the policy of either the tax or bankruptcy provisions at issue. A taxpayer’s I.R.C. § 172 election is irrevocable for two reasons: First, to allocate to the taxpayer, as opposed to the government, the risk of an improvident carryforward election (such as when the taxpayer has been unable to generate enough income in future tax years to take full advantage of the NOLs), see In re Russell, 927 F.2d at 416 (quoting Young v. Commissioner, 783 F.2d 1201, 1206 (5th Cir.1986)); second, to enhance the administrative efficiency of the tax system by promoting finality and not requiring the IRS to recalculate tax refunds.
While we recognize that “‘[tjaxes are the lifeblood of government,’ ” Battley v. United States (In re Berg), 121 F.3d 535, 537 (9th Cir.1997) (quoting Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)), neither of the policy objectives of I.R.C. § 172 is harmed by our interpretation today. In this case, neither the trustee nor the Feilers are attempting to use hindsight to correct a bad decision. To the contrary- — it is in the Feilers’ best interests to keep the carryforward, as some portion of the NOLs may remain for *955 them to apply to their future personal income taxes after they obtain a discharge from bankruptcy. It is the creditors who were harmed by the election. As for the administration of the tax system, while we recognize that it is certainly less convenient for the IRS to recalculate taxes and issue refunds for past tax years, the practice is not uncommon. In fact, under I.R.C. § 172, absent an election by the taxpayer, the normal practice is for the IRS to carry NOLs back to previous taxable years to be applied against previous tax bills, normally resulting in a tax refund. Our decision today simply requires the IRS to do what it would have been obligated to do anyway absent the Feilers’ affirmative election to waive the carryback.
On the other hand, the policy behind B.C. § 548 would be completely eviscerated by exempting an I.R.C. § 172 tax election from B.C. § 548 avoidance powers. The purpose behind B.C. § 548 is to avoid fraud and self-dealing by a debtor at the expense of the estate’s creditors. Under the government’s interpretation, I.R.C. § 1398 would also preclude the application of B.C. § 548(a)(1)(A), which allows the recovery of transfers made with the “actual intent to hinder, delay, or defraud” the debtor’s creditors. Were we to adopt the government’s interpretation, the debtors would be able to manipulate the tax and bankruptcy codes to deprive the estate’s creditors of a valuable asset — in this case, a $287,493 tax refund.
III. Election to Waive Carryback of the NOLs a “Transfer” to the Government of an “Interest of the Debtor[s] in Property” Under B.C. § 548
The government also argues that even if a trustee’s avoidance powers may trump the tax code, the requirements of B.C. § 548 have not been satisfied in this case because the Feilers’ election to forego a tax refund was not a “transfer of an interest of the debtor in property.”
A. Interest in Property
The first question as to the applicability of B.C. § 548 in this case is whether the election to forgo a tax refund and waive the carryback on the NOLs involved an “interest in property.” Because the right to receive a tax refund constitutes an interest in property, we believe that the election to waive the carryback and relinquish the right to a refund necessarily implicates a property interest.
Property is broadly defined by the Bankruptcy Code to include “all legal or equitable interests of the debtor.” B.C. § 541. Furthermore, the Supreme Court has explained that “the term ‘property’ has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.” Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). In Segal, the debtors incurred NOLs that gave rise to the right to a tax refund when carried back and applied to past tax years. Later in the same taxable year, the debtors filed for bankruptcy. The Court held that the resulting loss carryback refund claim constituted “property” at the time of the bankruptcy petitions, even though the petitions were filed in the middle of the taxable year, and the debtors did not yet have a right to the tax refunds. The right to a tax refund was considered “property,” and although Segal was a case under the old Bankruptcy Act, it remains good law under the present Bankruptcy Code. See Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1519 (10th Cir.1991) In fact, Congress affirmatively adopted the Segal holding when it enacted the present Bankruptcy Code:
[T]he estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property cur *956 rently specified in [the predecessor statute to B.C. § 541].... The result of Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), is followed, and the right to a refund is property of the estate.
S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, reprinted in 1978 U.S.C.C.A.N. 5963, 6323 (footnote omitted).
Whether the NOLs themselves are considered property is something of a red herring.[5] Under B.C. § 548, the question is whether the Feilers gave up property of the estate. In this case, the property they gave up was the tax refund — the NOLs are simply an accounting method for figuring their entitlement to the refund under the present tax code. Pre-election, the right to carry back the NOLs represented simply the right to a tax refund; as in Segal, the refund itself was the property interest. After the election, whether the Feilers retained a property interest in the NOLs that were carried forward is irrelevant, because the trustee need not have a property interest in what the debtor receives in return for a fraudulent transfer in order to avoid the transfer. B.C. § 548 avoidance powers apply to the interest in the property that the debtor gave up in the transfer — in this case, the tax refund associated with the right under the tax code to have the NOLs carried back.
The Feilers had the right to a tax refund had they done nothing and simply allowed the NOLs to be carried back and applied against their previous tax years. Instead, the Feilers affirmatively elected to waive the carryback and gave up their right to a refund in exchange for the ability to carry their NOLs forward to be applied against future taxes. Because the Feilers’ pre-election right to a refund was an interest in property, the election to relinquish that right to a refund involved an “interest of the debtor in property,” and is properly within the scope of a trustee’s B.C. § 548 avoidance powers.
B. Transfer to the Government
The government further claims that even if there was a property interest, it was not transferred. We disagree. When the Feilers elected to relinquish their right to an immediate tax refund in exchange for future tax considerations, a transfer occurred; the Feilers traded the right to a refund to the IRS in exchange for the right to deduct the NOLs from income on future tax returns.
Before the Feilers made the election to waive the carryback, the IRS would have been obligated to issue a tax refund of approximately $287,493 for the previous three tax years. The Feilers traded this right to a refund to the IRS in exchange for the right to carry the NOLs forward, and as a result, the IRS was no longer required to pay the $287,493 refund. Rather than require that the IRS actually pay itself the amount of the tax refund to be considered a “transferee” of the benefit, it is enough that the IRS traded one obligation for another, an obligation that the parties have stipulated was “less than, and not reasonably equivalent to” the value of the tax refunds that the Feilers were entitled to. The government was a “transferee” under B.C. § 548.
IV. Conclusion
Because we hold that an I.R.C. § 172(b)(3) irrevocable election is nonetheless avoidable by the bankruptcy trustee when the other requirements of a fraudulent transfer under B.C. § 548 have been *957 satisfied, the judgments of the BAP and the bankruptcy court are
AFFIRMED.

. The carryback period of I.R.C. § 172 has since been changed to 2 years, and the carry-forward period has been changed to 20 years. See Taxpayer Relief Act of 1997, Pub.L. 105-34, § 1082(a)(1) — (2).

. Throughout this opinion, provisions of the Internal Revenue Code (U.S.C. Title 26) will be cited as ''I.R.C.,” and provisions of the Bankruptcy Code (U.S.C. Title 11) will be cited as "B.C.”

. The Internal Revenue Code provides that the bankruptcy estate succeeds to all tax attributes ol the debtor, including any NOLs. See I.R.C. § 1398(g)(1). However, the trustee theorized that it was unlikely that the bankruptcy estate would have completely exhausted the $971,930 in NOLs. In that case, the Bankruptcy, Code provides that whatever tax attributes, including NOLs, are not utilized by the estate revert back to the debtor after bankruptcy. See B.C. § 346(i)(2). A debtor may then use the remaining NOLs to offset future personal tax liability.

. Although we believe the issue is of no consequence, we do note that both the Second and Eighth Circuits have held that NOLs are property of the debtor's estate. See Official Committee of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.), 928 F.2d 565, 573 (2nd Cir.1991) (corporate debtor's right to carry forward $74 million in NOLs was property of the estate); In re Russell, 927 F.2d at 417-19 (NOLs were "property of the estate” subject to a trustee’s B.C. § 548 avoidance powers).