**In re Paul Simpson SHINGLE-DECKER, Debtor.**

**Mary Beth Cain, Plaintiff,**

**v.**

**Paul Simpson Shingledecker, Debtor.**

**Bankruptcy No. 99–30013.
Adversary No. 99–3091.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Nov. 8, 1999.

David Lloyd Merrill, Port St. Lucie, FL, for Mary Beth Cain, c/o David Lloyd Merrill.

L. Lisa Batts, Stuart, FL, for Paul Simpson Shingledecker.

### MEMORANDUM OF OPINION AND ORDER[1].

RANDOLPH BAXTER, Bankruptcy Judge.

Paul Simpson Shingledecker (the Debtor) filed voluntary bankruptcy relief under Chapter 7 on January 4, 1999. Plaintiff Mary Beth Cain (Cain) filed the above-styled dischargeability adversary proceeding pursuant to §§ 523(a)(5) and (15), in addition to objecting to the Debtor's discharge under provisions of § 727(a)(2), (3)(5) and (7) of the Bankruptcy Code.

Jurisdiction is proper under 28 U.S.C. § 1334, with core matter jurisdiction further acquired under 28 U.S.C. § 157(b)(2)(I) and (O).

Upon consideration of the testimony adduced, a review of the evidence admitted, and arguments of counsel, the following factual findings and conclusions of law are rendered:

The parties were married to each other on August 12, 1993. Said marriage was dissolved pursuant to a Final Judgment of Dissolution of Marriage (Final Judgment) entered on March 13, 1998 which incorporated the terms of a Mediation Agreement dated March 5, 1998. Throughout the pendency of their marriage the Debtor was a named beneficiary in his grandfather's estate. He received two checks in August of 1998 from that estate in the amounts of $79,000.00 and $1,500.00, respectively, as initial installments on his inheritance. Upon receipt of those funds, he caused them to be deposited into a checking account of his step-father, one David Delk, where the checks were negotiated and the total amount of $80,500.00 was given to the Debtor in cash.

The Final Judgment, *inter alia*, ordered the Debtor to pay an amount of $25,000.00 to Cain for her interest in the marital residence. Such award was to be paid to Cain out of the Debtor's first installments from his inherited proceeds. That did not occur. Subsequently, the Debtor filed for bankruptcy relief, and this action ensued.

For resolution, the Court must determine whether (1) the obligation owed to Cain is dischargeable under applicable bankruptcy law; (2) whether the Debtor's alleged conduct warrants a denial of his receiving a general discharge in bankruptcy.

In dischargeability matters, generally, the burden of proof is upon the complainant who must meet that burden by a preponderance of the evidence. See, *In re Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Campbell*, 74 B.R. 805 (Bankr.M.D.Fla.1987). Herein, that burden is reposed upon Cain who must satisfy each element under § 523(a)(5) and (15), except for the corresponding burden of proof that subsection (a)(15) imposes on the Debtor. Similarly, the burden of proof is upon Cain to show that a general discharge should be denied the Debtor under § 727 of the Code.

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D., Ohio, sitting by designation.

82

Under § 727(a)(2), the following is noted:

(a) The Court shall grant the debtor a discharge, unless

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition—.

The term "transfer" under § 727(a)(2) and § 101(54) is to be broadly construed. "The definition of transfer is as broad as possible ... [A] deposit in a bank account or similar account is a transfer." *In re Levine,* 134 F.3d 1046, 1049 (11th Cir. 1998), quoting, S.Rep. No. 95–989, 95th Cong., 2d Sess. 26–27 (1978), reprinted in the 1978 U.S.Code Cong. & Admin.News 5787, 5813. See also, *In re Smiley,* 864 F.2d 562, 566 (7th Cir.1989).

A review of the sworn testimony reveals that Cain never received any portion of the $25,000.00 which the divorce court ordered the Debtor to pay her. (Cain, Direct). This is undisputed. The Debtor received the partial inheritance proceeds in July of 1998 after the divorce decree (Debtor, Direct) was entered and knowingly and willfully failed to pay Cain the $25,000.00 as ordered. The award of $25,000.00 by the divorce Court to Cain was unconditional and was time and method certain as to when and how the Debtor was to pay that amount. The Debtor signed the Mediation Agreement. Unfortunately, while he had the $80,500.00, he chose to violate the Court's order by not paying the Debtor. Indeed, he testified that he spent all the money which he inherited. (Debtor, Direct). His contention that he has no present ability to pay Cain the $25,000.00 he owes her may be true but is actually a non-issue, since he chose not to pay her when he more than had ample funds to do so when he had the $80,500.00 inheritance installment. Simply stated, it would be an abuse of the bankruptcy process to allow the Debtor a discharge in view of circumstances which he fully created.

Next, attention is given to the Complaint allegation regarding Cain's objection to the Debtor's receipt of a general discharge in bankruptcy. Contrary to the Debtor's equivocal direct testimony that he has "not transferred or concealed any property of the estate owned by [himself] one year prior to the filing of bankruptcy", the record reflects otherwise. The unrefuted written direct testimony of the Debtor's step-father, David Delk, reveals that he deposited the Debtor's $80,500.00 inheritance proceeds in his personal checking account in July of 1998 at the Debtor's request. The Debtor filed his bankruptcy petition on January 4, 1999, well within the one-year period of the transfer. His statement of Financial Affairs makes no mention of this transfer. Indeed, the Debtor acknowledged that his failure to schedule the subject inheritance as a contingent interest was improper. (Debtor, Direct). His present admission that he spent all of the partial inheritance received by him to date does not absolve nor negate his nondisclosure on his original petition papers when the case was filed. Only in amended Schedule B's filed by the Debtor did he fully disclose all of his present and contingent inheritance interests.

As noted above, in order to preclude debtor from obtaining a general discharge under § 727(a)(2) of the Bankruptcy Code, the following four things must be shown by the objecting creditor:

1. The transfer;

2. within one year before debtor filed bankruptcy;

3. of property of the debtor;

4. with intent to hinder, delay or defraud.

■ Plaintiff Cain has sufficiently proved each of these elements under § 727(a)(2) in this proceeding. A qualifying transfer occurred when the Debtor deposited the inheritance installment into his step-father's checking account for negotiation. Not only does ample case law construe a check deposit as a transfer for § 727(a)(2) purposes, the statutory definition of the term "transfer" under § .101(54) of the Bankruptcy Code is sufficiently broad to include a check deposit as a form of transfer. Secondly, the testimony is unrefuted to show that the Debtor received the initial $80,500.00 inheritance installments in July of 1998, and made the deposit into his step-father's account well within one year before the Debtor filed bankruptcy on January 4, 1999. Next, it is acknowledged by the Debtor and is undisputed that the $80,500.00 were initial inheritance installments bequeathed to him from his grandfather's estate which has an estimated value in excess of $1 Million.

Lastly, other findings evince that the Debtor's conduct shows an intent to hinder, delay or defraud a creditor (Cain) from receiving the $25,000.00 awarded to her in the state court's final judgment.

The Debtor acknowledged his familiarity with the Final Judgment and its incorporated Mediation Agreement. Indeed, he and Cain signed the Agreement. *Inter alia*, the Final Judgment ordered him to pay Cain $25,000.00 from his initial inheritance proceeds. He did not. It also ordered him to instruct the administrator of his grandfather's estate to pay Cain the $25,000.00. He did not. It further ordered him to inform her attorney when he received the initial inheritance disbursement. He did not. At the time he received said initial disbursement, the Debtor had a personal checking account. Rather than deposit the $80,500.00 into his own account and pay his obligation as ordered, he used his step-father's account for the purpose of cashing the two checks totaling $80,500.00, received the proceeds in cash and commenced paying numerous other obligations but not the $25,000.00 he was under Court order to pay Cain. Debtor's reason offered for using his step-father's checking account was incredible. Notedly, his personal checking account was at the same bank where his stepfather's checking account was located.

During the period of July, 1998 through December, 1998, the Debtor received an undisputed total of $86,128.68 from his grandfather's estate. None of those funds were used by him to pay the court-ordered $25,000.00 to Cain. At no point in time did he deposit any of these inherited funds into his personal checking account. Lastly, he testified that all of the inheritance funds received by him have been spent. See Exh. D–2. The totality of these factual findings evince an intentional fraud upon the Plaintiff Cain by the Debtor in regard to his $25,000.00 obligation to her. Further, the Final Judgment contains no offset remedies respecting the $25,000.00 award. Having so found, the required elements under § 727(a)(2) have been established by the required burden of proof. Accordingly, judgment is hereby granted in favor of the Plaintiff Cain on her objection to the Debtor receiving a general discharge in bankruptcy. This determination having been made under § 727(a)(2), this Court does not reach the remaining Complaint issues addressing other subsections of § 727. Nor does it reach the allegations of debt dischargeability under § 523(a)(5) and (a)(15) of the Bankruptcy Code.

IT IS SO ORDERED.