**UNITED STATES of America,
Appellant,**

v.

**Soneet R. KAPILA, Appellee.**

**No. 08–60723–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 18, 2008.

58

### ORDER

CECILIA M. ALTONAGA, District Judge.

Appellant, the United States of America, appeals an Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross Motion for Summary Judgment (the "Order") entered by the United States Bankruptcy Court for the Southern District of Florida (the "bankruptcy court"). *See In re Taylor,* 386 B.R. 361 (Bankr.S.D.Fla.2008). In its Order, the bankruptcy court granted summary judgment in favor of Appellee, Soneet R. Kapila ("Kapila"), Trustee for the Debtor, Daniel Taylor ("Taylor"), in the underlying bankruptcy proceeding, and denied summary judgment in favor of Appellant, the United States. The Court has carefully considered the briefs submitted by the parties, applicable law, and the pertinent portions of the record.

### I. BACKGROUND [1]

Taylor purchased a sign manufacturing franchise called Sign–A–Rama in 2000 through Lula Corporation ("Lula"), an S–Corporation of which he was the sole shareholder. *See Taylor,* 386 B.R. at 363. In 2004, Taylor acquired a second Sign–A–Rama franchise which he operated through Dundee Corporation ("Dundee"), also an S–Corporation of which he was sole owner. *Id.* Shortly after purchasing the second

franchise, Taylor's consolidated business operations began to fail. *Id.* He shut down operations of Dundee in September 2005. *Id.*

As a result of these business losses, Taylor incurred a net operating loss ("NOL") of $58, 612 for the tax year 2005. *Id.* Pursuant to 26 U.S.C. § 172(c), a taxpayer generates a NOL during a tax year if his or her deductible business expenses exceed net income. Under the Internal Revenue Code ("IRC"), when this situation occurs the taxpayer may elect either to apply the loss to the two preceding tax years to offset past tax liability and possibly receive a tax refund (*see* 26 U.S.C. § 172(b)(1)), or to waive this option and "carry forward" the entire NOL to offset future tax liabilities (*see id.* at § 172(b)(3)). Once this election is made, it is deemed to be "irrevocable." *Id.*

On July 24, 2006, Taylor filed his tax return for the 2005 tax year. *See Taylor,* 386 B.R. at 363. The bankruptcy court accepted Kapila's assertion that had Taylor not waived the NOL carry-back, he would have been entitled to apply it to the 2003 tax year for a refund of $11, 201. Instead, Taylor elected to carry forward the entire NOL to use in future tax years on the advice of his accountant. Taylor's accountant advised him to make that election because Taylor had informed him that he expected to sell his businesses in the near future for between $100,000 and $150,000.

On July 16, 2006, Taylor entered into an agreement (the "Sales Agreement") for the sale of Lula's assets for $285,000. *See id.* at 364. The Sales Agreement contained a number of contingencies including the absence of any outstanding judgment against

---

1. The United States does not dispute the factual findings by the bankruptcy court for purposes of this appeal. The undersigned briefly recounts those findings as they relate to the legal issue presented.

Lula, and a due diligence period during which the buyer could back out of the sale and be refunded his deposit if he was "unsatisfied with the business." *Id.* A $3,930 judgment had been entered against Lula in Florida state court on February 7, 2006, which remains unsatisfied. *See id.* at 365. The Sales Agreement was supposed to close on July 26, 2006, the same day Taylor signed his 2005 tax return. *See id.* at 364. However, the buyer backed out of the sale and it was never consummated. *See id.* On January 22, 2007, Taylor filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Kapila was subsequently appointed Trustee of Taylor's estate.

As a result of Taylor's NOL waiver election, Kapila was unable to amend Taylor's 2005 tax return to claim a refund for the estate, a refund which Taylor would have been entitled to absent the waiver election. Kapila, therefore, commenced an adversary proceeding against the United States on August 31, 2007 seeking to avoid Taylor's NOL carry-back waiver as a fraudulent transfer pursuant to 11 U.S.C. § 548(a) ("Section 548"). He subsequently filed a motion for summary judgment before the bankruptcy court on December 20, 2007. The United States, in turn, cross-moved for summary judgment in its favor on January 9, 2008.

In its Order granting summary judgment in favor of Kapila, the bankruptcy court observed that "although [Taylor] may subjectively have believed that there was a reasonable prospect of selling Lula's assets ... at the time he executed the waiver of the NOL carryback on July 24, 2006, the failure of each of [the contingencies set forth in the Sales Agreement] meant that there was ... no reasonable objective prospect that the sale ... would close." *Taylor,* 386 B.R. at 365. Thus, Taylor "was insolvent at the time of his election to waive the NOL carryback." *Id.*

In light of these findings, the bankruptcy court granted summary judgment in favor of Kapila and avoided Taylor's NOL carry-back waiver as a fraudulent transfer.

The court premised this holding on a series of legal conclusions. First, "as a matter of law the pre-transfer NOL carry-back tax attribute is an interest in property held by the Debtor." *Id.* at 369. Second, "Debtor's waiver operated as a matter of law as a transfer of property to the United States." *Id.* Third, the Court acknowledged "[t]he sound tax policy for irrevocability under the Tax Code" but concluded that policy was "not offended or harmed by the avoidance of the NOL carryback waiver under bankruptcy law," and thus Kapila was entitled to recover Taylor's transfer of his NOL carry-back under Section 548. *Id.* at 372.

The United States filed its Notice of Appeal on May 15, 2008. The sole issue presented is purely one of law: whether an insolvent taxpayer's irrevocable election of a waiver of NOL within a year of filing a bankruptcy petition is avoidable as a fraudulent transfer under 11 U.S.C. § 548. The United States asserts the bankruptcy court's determination that a NOL carry-back waiver is avoidable by a trustee is incorrect as a matter of law. In support of this assertion, it raises three specific reasons the bankruptcy court's conclusion is in error: (1) a taxpayer's net operating loss is not a property right; (2) waiving a NOL carry-back does not constitute a transfer to the United States; and (3) a trustee cannot use Section 548 to avoid Taylor's NOL carry-back waiver because the IRC mandates this tax election is irrevocable. The undersigned considers each of these arguments in turn.

## II. *ANALYSIS*

### A. Standard of Review

District courts have appellate jurisdiction over the judgments, orders, and

decrees of bankruptcy courts. 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's conclusions of law *de novo*. *In re Citation Corp.*, 493 F.3d 1313, 1317 (11th Cir.2007). Moreover, the power of a trustee to avoid fraudulent transfers under Section 548 presents a question of law that must be reviewed *de novo*. *See In re Cannon*, 277 F.3d 838, 849 (6th Cir.2002).

## B. Whether Taylor's NOL Carry–Back Waiver is Avoidable as a Fraudulent Transfer under Section 548

Section 548(a)(1)(B) of the Bankruptcy Code permits a trustee to "avoid" pre-petition transfers of property by a debtor where the trustee can "show that (i) there was a transfer of an interest of the Debtor in property, (ii) the transfer occurred within two years preceding the Petition Date, (iii) the Debtor received less than reasonably equivalent value in exchange for the transfer, and (iv) the Debtor was either insolvent on the date of the transfer or became insolvent as a result of the transfer." *In re Clarkston*, 387 B.R. 882, 888 (Bankr.S.D.Fla.2008) (citing 11 U.S.C. § 548(a)(1)(B)) (additional citations omitted). For purposes of this appeal, the United States does not dispute that Taylor was insolvent at the time he made the NOL carry-back waiver, nor that the waiver occurred within two years of his bankruptcy petition. Instead, the United States contends that the waiver fails because it is neither a property interest, nor does it constitute a transfer to the United States.

## 1. Whether a NOL Carry–Back Waiver is a Property Right under Bankruptcy Law

■ "Section 541(a)(1) [of the Bankruptcy Code] defines property of the bankruptcy estate as 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir.2006) (quoting 11 U.S.C. § 541(a)(1)). In *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), a pre-Bankruptcy Code decision, the Supreme Court held that, since the purpose of bankruptcy law was "to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition," a debtor's interest in a tax refund was property of the estate, even though the NOL was sustained for the year in which the debtor filed his bankruptcy petition. The United States contends that the bankruptcy court was in error to rely upon *Segal* in support of its conclusion that Taylor's NOL carry-back waiver was an interest in property subject to Kapila's avoidance powers.

As an initial matter, a number of federal appellate courts have recognized that *Segal's* broad conception of "property" remains good law after the enactment of the Bankruptcy Code. *See, e.g., In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3rd Cir. 2006) (holding that right of employer under ERISA to recoup future surpluses in pension plan was a transferable property interest subject to a trustee's avoidance powers); *In re Feiler*, 218 F.3d 948, 955–56 (9th Cir.2000) (stating that Congress explicitly adopted *Segal's* holding into the Bankruptcy Code and concluding that NOL carry-back waiver was avoidable by bankruptcy trustee); *In re Bakersfield Westar, Inc.*, 226 B.R. 227, 233–34 (9th Cir.BAP1998) (holding that trustee was entitled to avoid debtor's "irrevocable" election to be treated as subchapter S corporation); *In re Barowsky*, 946 F.2d 1516, 1518–19 (10th Cir.1991) (relying upon *Segal* in holding that portion of tax refund attributable to pre-petition portion of a taxable year was property of the bankruptcy estate); *In re Prudential Lines, Inc.*, 928 F.2d 565, 572 (2nd Cir.1991) (conclud-

ing that NOL carryforward was property of bankruptcy estate). Moreover, as the Second Circuit observed, "[t]he legislative history of § 541 demonstrates that Congress agreed with the result reached by the *Segal* Court[:]"

> [T]he estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in [the predecessor statute to § 541]. . . . The result of *Segal v. Rochelle,* 382 U.S. 375 [86 S.Ct. 511, 15 L.Ed.2d 428] (1966), is followed, and the right to a refund is property of the estate.

*Prudential,* 928 F.2d at 571 (quoting H.R.Rep. No. 95–595, 367 (1978)).

The United States acknowledges that the only two federal appellate courts to have considered the same issue raised here have concluded that a NOL carry-back waiver is an interest in property avoidable by a bankruptcy trustee. *See In re Feiler,* 218 F.3d at 955–56; *In re Russell,* 927 F.2d 413, 416–17 (8th Cir.1991). It contends, however, that these cases were wrongly decided for reasons it now explains on appeal.

In support of its position that NOL carry-back waivers are not property under the Bankruptcy Code, the United States relies on the operative language of 26 U.S.C. § 1398(g) ("Section 1398(g)") which details the tax attributes of a debtor to which a bankruptcy estate will succeed. In relevant part, Section 1398(g)(1) provides that the bankruptcy estate "shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor . . . (1)

Net operating loss carryovers.—The net operating loss carryovers determined under section 172." The United States contends the enactment of Section 1398(g) indicates Congress did not consider NOLs to be property that automatically passes to a bankruptcy estate under Section 541 of the Bankruptcy Code. Thus, it submits that Section 1398(g) only permits the bankruptcy estate to succeed to NOLs as they existed at the time of the bankruptcy since Congress made no provision to permit a bankruptcy trustee to modify or reverse a debtor's prior NOL elections.

In addressing the identical argument in *Feiler,* the Ninth Circuit noted:

> What a trustee "succeeds to" under I.R.C. § 1398 is not the same as what he may avoid under B.C. § 548; what property is part of the bankruptcy estate and what property may be recovered with a trustee's avoidance powers are two separate questions. I.R.C. § 1398 merely allocates the NOLs as bankruptcy estate property. Whether the election to carry forward the NOLs is a fraudulent transfer is another question, and depends on B.C. § 548.

218 F.3d at 953.

■ Although the *Feiler* and *Russell* decisions are not binding, their reasoning is nevertheless persuasive. The recognition of a NOL carry-back waiver as an interest in property which is avoidable by a bankruptcy trustee is consistent with Congress' clear intent that "property" and "an interest in property" be broadly defined under the Bankruptcy Code. The undersigned is not persuaded by the United States' argument that Section 1398(g) alters this analysis. Even if the Court were to accept the United States' position that a bankruptcy trustee only succeeds to NOLs as they existed at the time of the bankruptcy petition, that would not resolve the question of whether Taylor's NOL car-

ry-back waiver is avoidable by Kapila as recognized by *Feiler.*

The practical effect of Taylor's election to waive his NOL carry-back was to relinquish his interest in a present tax refund of $11,201 in favor of a speculative future refund. In light of Taylor's insolvency at the time of his election, and the likelihood that the value of the present refund he waived would far outstrip the value of any potential future refund, the bankruptcy court correctly concluded that all of the elements of a fraudulent transfer were satisfied. *See Taylor*, 386 B.R. at 370–71. It is the transfer of Taylor's present right to a refund for less than equivalent value that Kapila is entitled to avoid under Section 548. A NOL is an accounting device used to determine a taxpayer's entitlement to a tax refund. The manner in which a NOL is deemed to become property of the bankruptcy estate is inapposite to the issue of whether a debtor has transferred his present interest in a tax refund for less than equivalent value so as to put that property beyond the reach of his creditors. Accordingly, the bankruptcy court was correct in concluding that a NOL waiver is a property interest subject to a bankruptcy trustee's avoidance powers.

### 2. Whether Taylor's Waiver of the NOL Carry–Back was a Transfer to the United States

■ The United States also argues that even if a NOL carry-back waiver is deemed to be a property interest, all of the elements of a fraudulent transfer were not satisfied because there was no actual transfer of that interest. In support of this position, it relies upon Section 548(d)(1), which provides:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

11 U.S.C. § 548(d)(1).

The United States contends that based on this description, a transfer requires the existence of a "transferee." It submits that Taylor's NOL carry-back waiver did not transfer anything of value to the United States, and thus the waiver does not constitute a transfer of property subject to a trustee's avoidance powers under Section 548.

■ The Bankruptcy Code defines "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or . . . an interest in property." 11 U.S.C. § 101(54)(D)(i-ii). Contrary to the United States' assertions, the term is to be broadly construed. *In re Shingledecker*, 242 B.R. 80, 82 (Bankr. S.D.Fla.1999) ("[T]he term 'transfer' under § 727(a)(2) and § 101(54) is to be broadly construed."); *accord In re Bajgar*, 104 F.3d 495, 498 (1st Cir.1997) ("[T]he legislative history of Section 101(54), which defines 'transfer,' explains that '[t]he definition of transfer is as broad as possible.' ") (quoting S.Rep. No. 989, 95th Cong. 27 (1978)); *In re Dereve*, 381 B.R. 309, 326 (Bankr.N.D.Fla.2007).

Although the United States contends that characterizing Taylor's election of the NOL waiver as a "transfer" risks stretching this definition "beyond recognition" (*Appellant's Brief* [D.E. 4] at 10), it is the United States' reading of the term that risks departing farthest from Congress'

intent. The United States argues it did not receive anything of value as a result of Taylor's NOL carry-back waiver since the waiver "does not forever rid the taxpayer of the benefits of an NOL." (*Id.* at 11). This assertion, however, ignores the practical effect of the NOL waiver.

As previously discussed, by electing to carry-forward his NOL, Taylor waived his right to a present tax refund of $11, 201 in favor of a future tax attribute. Had Taylor failed to make an affirmative election, the United States would have been required to pay him a tax refund. Thus, Taylor's NOL waiver absolved the United States of its obligation to pay a refund it would otherwise have been required to make. *See In re Feiler*, 218 F.3d at 956 (Debtors "traded [their] right to a refund to the IRS in exchange for the right to carry the NOLs forward, and as a result, the IRS was no longer required to pay the $287,493 refund. Rather than require that the IRS actually pay itself the amount of the tax refund to be considered a 'transferee' of the benefit, it is enough that the IRS traded one obligation for another . . . ."). As Taylor was insolvent at the time of the election, the effect of his NOL carry-back waiver was to constructively place that refund amount in the possession of the United States and out of the reach of Taylor's creditors. The United States' contention that it did not physically receive a transfer of cash amounts to little more than semantics. The undersigned therefore concludes Taylor's waiver of a present tax refund falls within the indisputably broad definition of "transfer" under the Bankruptcy Code.

### 3. Whether Section 548 Permits a Trustee to Avoid an Irrevocable Tax Election by a Debtor

■ Finally, the United States argues that regardless of whether Taylor's NOL carry-back waiver is an interest in property which he transferred to the United States, it is not subject to Kapila's avoidance powers because Taylor's election of the waiver is "irrevocable" under 26 U.S.C. § 172(b)(3). The United States' argument ignores the fact that Kapila is not seeking to "revoke" Taylor's NOL carry-back waiver but rather to avoid it as a fraudulent transfer under Section 548. This is a critical distinction. A trustee's avoidance powers under Section 548 are frequently used to undo transactions that are "irrevocable" as to the debtor. *Russell*, 927 F.2d at 416 (A bankruptcy trustee's avoidance powers " 'are exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate,' and are so broad that they even enable trustees to avoid transfers considered 'irrevocable' under state law.") (internal citations omitted).

■ The undersigned is in agreement with the bankruptcy court that the United States' focus on the fact that the NOL carry-back waiver is irrevocable as to Taylor is misplaced since "the bankruptcy trustee is not constrained by only being able to act as the debtor could . . . ." *Feiler*, 218 F.3d at 952. Indeed, "had Congress only intended that a trustee be able to avoid transactions that were otherwise revocable by the debtor, there would be no reason to grant the trustee extraordinary B.C. § 548 avoidance powers at all." *Id.*

■ As the bankruptcy court observed, preventing Kapila from avoiding Taylor's NOL carry-back waiver would essentially permit Taylor to protect a future tax attribute from his creditors and thereby commit "money laundering through the kind auspices of the United States." *Taylor*, 386 B.R. at 370. "The purpose underlying the irrevocability of a § 172(b)(3)(C) election is to prevent a taxpayer from manipulating the Tax Code once the taxpayer discovers that a mistake has been made."

*Russell,* 927 F.2d at 416. No such interest is implicated here by Kapila's attempt to avoid Taylor's NOL carry-back waiver. The undersigned is therefore in agreement with the bankruptcy court that the "irrevocable" nature of the waiver under the IRC does not impact Kapila's ability to avoid the election under Section 548.

Moreover, permitting a trustee to avoid a NOL waiver is the most logical manner to reconcile Section 172 of the IRC with the avoidance powers set forth in Section 548. The ultimate damage to the administration of the nation's tax policies that results from permitting a bankruptcy trustee to avoid a debtor's NOL waiver election is relatively minimal since "absent an election by the taxpayer, the normal practice is for the IRS to carry NOLs back to previous taxable years to be applied against previous tax bills, normally resulting in a tax refund." *Feiler,* 218 F.3d at 955. In contrast, Section 548 "would be completely eviscerated by exempting a [NOL carry-back waiver] from [a trustee's] avoidance powers" particularly since the United States' interpretation of I.R.C. § 1398(g) would also preclude a trustee's avoidance of "transfers made with the 'actual intent to hinder, delay, or defraud' the debtor's creditors." *Id.*

The undersigned is also unpersuaded by the United States' reliance on *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). In *Midlantic,* the Supreme Court observed that "[i]f Congress wishes to grant the trustee an extraordinary exemption from nonbankruptcy law, 'the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt.'" *Id.* at 501, 106 S.Ct. 755 (quoting *Swarts v. Hammer,* 194 U.S. 441, 444, 24 S.Ct. 695, 48 L.Ed.

1060 (1904)). The United States cites this language for the proposition that Congress' failure to explicitly exempt bankruptcy trustees from Section 172(b)(3) demonstrates they, too, are subject to the irrevocability of the NOL waiver.

Contrary to the United States' assertions, the avoidance powers of Section 548 are an explicit expression of Congress' intent that a trustee be given an extraordinary exemption to undo transactions that may be otherwise irreversible under state or federal law. *See Feiler,* 218 F.3d at 954 ("Congress *has* granted the bankruptcy trustee an 'extraordinary exemption' to non-bankruptcy law by conferring B.C. § 548 avoidance powers to allow the trustee to avoid any number of transactions that would otherwise be final and irrevocable by the debtor under non-bankruptcy law.") (emphasis in original). This power, however, is not unlimited. In creating the Section 548 avoidance powers, Congress has explicitly stated that a trustee may void otherwise valid transactions only where the specified elements of constructive or actual fraud are present. Moreover, as discussed, to exempt NOL carry-back waivers from these avoidance powers would run counter to the underlying rationale for Congress' creation of this power. Accordingly, the undersigned concludes the bankruptcy court's decision was not in error.

### III. *CONCLUSION*

For all of the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the United States Bankruptcy Court for the Southern District of Florida's Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross Motion for Summary Judgment is AF-

FIRMED. The Clerk of the Court is instructed to **CLOSE** this case.